## JAMES KITT *v.* STATE OF MARYLAND

[No. 241, Initial Term, 1967.]

308

*Decided November 2, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and PRETTYMAN, J., Associate Judge of the First Judicial Circuit, specially assigned.

*William Carruth* for appellant.

*Alfred J. O'Ferrall, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Charles E. Moylan, Jr., State's Attorney for Baltimore City,* on the brief, for appellee.

PER CURIAM.

The appellant was found guilty of robbery with a deadly weapon and murder in the first degree (without capital punishment) on May 3, 1966 by a jury in the Criminal Court of Baltimore. He was sentenced by Judge James A. Perrott to' a life term on the murder charge and twenty years imprisonment on the robbery count, the sentences to run consecutively. He contends on this appeal that there was no legally sufficient evidence of his guilt to go to the jury, and more particularly that there was no corroboration of the testimony of an accomplice, and that consequently the court erred in failing to grant his mo-

tion for judgment of acquittal offered at the end of the entire case.

The evidence adduced at the trial established that on the morning of January 2, 1965, at about 6:00 a.m., Burman's Cafe was held up and about $23.00 was taken at that time. Charles O. Hazard, the bartender who opened the establishment in the morning, was shot in the abdomen in the course of the robbery and died as a result of this wound on January 5, 1965 at Bon Secours Hospital.

Alphonso Craft, an accomplice, testified at the trial that in the early morning hours of January 2, 1965, he, together with the appellant Roosevelt Boone, and Abraham Goode, planned to rob one "Little Melvin," a narcotics pusher. When Little Melvin failed to appear at his house after a four hour wait, the quartet formulated plans for another robbery. Acting in accordance with this plan, the four drove in Craft's yellow '62 Chevrolet to a lot near the intended robbery scene, Burman's Cafe. Craft testified that he stayed in the car while the other three went toward the cafe, the plan being for Boone and Goode to go inside, while the appellant functioned as a lookout. Three or four minutes later, Craft observed a young boy with a hood over his face walk past and cross the street. At that time the appellant returned to the car, followed a few seconds later by Boone and Goode. Boone placed a paper bag over the license plate of the car, after which Craft observed that appellant had in his possession a black pistol with a pearl or white handle. Craft testified that he heard appellant threaten to shoot Boone and Goode "for shooting the man in the bar" and that Goode had admitted the slaying, saying that it was accidental. The appellant and Boone left Craft's car shortly after the killing, at which time Goode gave some money to each of them. Craft further testified that he was promised immunity from prosecution by the State in return for his testimony.

The autopsy report, admitted into evidence by stipulation, established that the deceased had died of a gunshot wound, and that his death was a homicide, incurred during a hold-up at Burman's Cafe, wherein the body was found. James C. Burman, manager of the cafe, testified that on the morning of January 2, 1965, at about 6:40 a.m., he arrived on the scene and

found the premises in a rubble, blood all over the floor, and an open cash register with $23.00 missing therefrom. He stated that at that time the deceased, who had opened the tavern in the morning, had already been taken to the hospital. Wayne Fleming, a newspaper boy, testified that on the morning of January 2, 1965, between 5:45 a.m. and 6:15 a.m., he saw two men in Burman's Cafe who subsequently ran out carrying paper bags and proceeded around the corner to a white '62 or '63 Chevrolet parked in an alley nearby. The witness stated that a photograph of a car identified by Craft as his automobile used as the get-away car in the robbery looked like the car he had seen that morning. On the morning of the robbery, the witness Fleming was wearing a hood or mask over his face, which was admitted into evidence, and identified by Craft as the one which he had observed a paper boy to be wearing on the morning of the crime. Mrs. Evelyn Knight testified that between 6:00 a.m. and 7:00 a.m. on the morning of January 2, 1965, she was visited at her house by the appellant and Roosevelt Boone, identified as one of the robbers. Mrs. Knight stated that the appellant had in his possession what looked like a gun with a white handle. Sergeant Austin B. Callahan of the Baltimore City Police Department testified that the appellant acknowledged to him that he had seen Craft, Boone and Goode together prior to the commission of the crime, but that he had declined to go with them in their car. The appellant told Sergeant Callahan that on the date of the robbery he had been drinking at the house of a friend where he remained all night, leaving sometime the next day. He was, however, unable to identify either the friend or his address. Appellant further stated to Sergeant Callahan that he had not seen Boone, Goode or Craft from the time previously mentioned until the time of his arrest.

It is settled in Maryland that to support a conviction the testimony of an accomplice must be corroborated by evidence as to some of the material facts tending to show that the accused was either identified with the perpetrators of the crime or had participated in the commission of the crime itself. *Mulcahy v. State,* 221 Md. 413, 427; *Wright v. State,* 219 Md. 643, 650. It is not necessary for the corroborating evidence to be sufficient in itself to convict; it need only support some of the ma-

terial points of the accomplice's testimony, *Judy v. State,* 218 Md. 168, 176, tending to show the guilt of the accused, *Polansky v. State,* 205 Md. 362, 368. Not much in the way of corroboration is, however, actually required to support an accomplice's testimony. *Barton v. State,* 2 Md. App. 52, 56.

Mrs. Knight's testimony placed appellant and Boone together in her house shortly after the crime, thus independently showing appellant's identification with one of the perpetrators of the crime under circumstances corroborative of the accomplice's testimony that the two men departed from the get-away car at the same time. See *Mulcahy v. State, supra,* and *Wright v. State, supra.* Also persuasively corroborative of Craft's testimony that the robbery plan was for Goode and Boone to enter the premises and appellant to act as a lookout was Fleming's testimony that he saw only two men inside the cafe with the deceased. And the fact that Mrs. Knight indicated that she observed what appeared to be a white handled gun in appellant's possession shortly after the crime corresponds with Craft's testimony on this point. We find, therefore, that Craft's testimony was sufficiently corroborated.

Concerning the sufficiency of the evidence generally, it is settled that in a trial before a jury we will not inquire into and measure the weight of the evidence, but only determine whether there is any relevant evidence which could properly sustain a conviction. *Loker v. State,* 2 Md. App. 1; *Graef v. State,* 1 Md. App. 161; *Borman v. State,* 1 Md. App. 276; *Quinn v. State,* 1 Md. App. 373; *Culver v. State,* 1 Md. App. 406. The testimony of the accomplice Craft, together with the other evidence presented by the State clearly constituted legally sufficient evidence to go to the jury, and hence the court's action in denying appellant's motion for a judgment of acquittal was proper.

Appellant also contends that his statement to Sergeant Callahan was improperly admitted in evidence. Since the trial was commenced prior to June 13, 1966, the decision in *Miranda v. Arizona,* 384 U. S. 436, is not applicable. See *Johnson v. New Jersey,* 384 U. S. 719. And since appellant does not allege that he had requested counsel prior to the taking of his statement, that statement cannot be held inadmissible under *Escobedo v.*

*Illinois,* 378 U. S. 478. In addition, appellant offered no objection to its admission and consequently the alleged error will not be considered on appeal. Maryland Rule 1085. See also *Gaudio and Bucci v. State,* 1 Md. App. 455.

The allegation of appellant that the testimony of a codefendant is incompetent per se is untenable. Although as heretofore indicated a defendant may not be convicted solely upon the uncorroborated testimony of an accomplice, such testimony is nevertheless competent evidence. See *Howard v. State,* 238 Md. 623.

Appellant's final contention is that he was prejudiced by the court's failure to advise him of his right to testify, or remain silent, and by its failure to inform him that the State had offered immunity to Craft for his testimony. We find no merit in either allegation. Where an accused is represented by counsel, ordinarily there is no requirement that the court undertake to inform him of his rights. *Stevens v. State,* 232 Md. 33, *cert. den.* 375 U. S. 886; *Fowler v. State,* 237 Md. 508. We find no authority for the proposition that the State must inform a defendant that a codefendant has been offered immunity. In any event, the proposed agreement between Craft and the State was clearly established in open court by Craft's testimony.

*Judgment affirmed.*