ROOSEVELT BOONE *v.* STATE OF
MARYLAND

[No. 48, September Term, 1967.]

12

*Decided January 24, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Robert F. Freeze* for appellant.

*Frank A. DeCosta, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Samuel Peregoff, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the majority opinion of the Court. THOMPSON, J., dissents. Dissenting opinion by THOMPSON, J., at page 36, *infra.*

The appellant, Abraham Goode, Alphonso Obadiah Craft, and James Kitt were jointly indicted for the murder and robbery

with a deadly weapon of Charles Oliver Hazard by a grand jury for the City of Baltimore on January 29, 1965, prior to the decisions of the Court of Appeals in *Schowgurow v. State,* 240 Md. 121 and *State v. Madison,* 240 Md. 265. On November 2, 1965, the appellant and the other co-defendants were again indicted for the robbery with a deadly weapon and, with the exception of Goode, for the murder,[1] and the original indictments against the appellant were dismissed upon his motion based on the decision in *Schowgurow* on November 9, 1965. On February 14, 1966, upon the appellant's request for a change of venue, his case was removed to the Circuit Court for Baltimore County where trial was held before a jury. The jury returned a verdict of "guilty" on the murder indictment without specifying whether it was murder in the first or second degree.[2] As Art. 27, § 412, Md. Code (1967 Repl. Vol.) provides that on finding a person guilty of murder, the jury shall "* * * ascertain in their verdict whether it be murder in the first or second degree * * *", the trial court granted the appellant's motion for a new trial. The appellant waived a trial by jury at the retrial. The court convicted him of murder in the first degree and sentenced him to imprisonment for the term of his natural life.

The State's case depended in large measure upon the testimony of the co-defendant, Craft, who was granted immunity from prosecution, the cases against him being stetted. Craft had testified for the State in the trial of the co-defendant, Kitt.[3]

---

1. Although it does not appear from the evidence introduced in the instant case, Goode pleaded guilty to murder in the second degree before the second indictment was filed.

2. The case went to the jury on the robbery indictment on two counts—robbery and attempted robbery with a deadly weapon. The jury returned a general verdict of guilty and the appellant was sentenced to 18 years (subsequently reduced to 17 years). The judgment was affirmed by this Court. *Boone v. State,* 2 Md. App. 80.

3. On May 3, 1966, Kit was found guilty of murder in the first degree (without capital punishment) and robbery with a deadly weapon by a jury in the Criminal Court of Baltimore. He was sentenced to imprisonment for the term of his natural life in the murder charge and for a term of 20 years on the robbery charge, the sentences to run consecutively. The judgments were affirmed by this Court. *Kitt v. State,* 2 Md. App. 306.

When called to the stand in the instant case, however, Craft stated that he had been advised by his attorney that he had been granted immunity in the case of *Kitt v. State,* for his testimony, "* * * but I was never informed that I would have to testify against Boone in this case, and I informed the State that I didn't want to testify and I still don't want to testify in this case." He indicated that it was his constitutional right not to testify as the testimony might incriminate him but he admitted he testified on "the same charge" in the case against Kitt. The trial court held that Craft was a compellable witness and directed him to answer questions "pertinent to the issue here involved, namely * * * the indictment of the defendant, Roosevelt Boone." The appellant contends that the trial court erred in compelling Craft to testify. The contention is fully answered by *Butz v. State,* 221 Md. 68, 73-74:

> "The privilege against self-incrimination is a personal one and must be asserted by the witness, and, although it is by no means certain that Mrs. Curry [the witness] properly claimed the privilege, for the purposes of this case we shall assume that neither the court nor the prosecutor, without conferral of power by statute, could grant her immunity and that she properly claimed the privilege. With both of these assumptions in favor of the appellant, it avails him nothing. The privilege belonged to the witness, not to the defendant. *Roddy v. Finnegan,* 43 Md. 490, 502; *Raymond v. State,* 195 Md. 126, 130, 72 A. 2d 711. Cf. *Richardson v. State,* 103 Md. 112, 117, 63 A. 317. It is intended for the protection of the witness only and does not involve any right of the parties to litigation (unless, of course, the witness is also the party). 8 Wigmore, *Evidence* (3rd Ed.), Secs. 2196, 2270. The testimony given by a witness, who has a proper claim of privilege, is not subject to objection on the ground of privilege at the instance of the defendant, but is competent evidence and admissible against him, if material. *Chesapeake Club v. State,* 63 Md. 446, 455, 458. And if a witness makes a claim of privilege and it is

improperly disallowed by the court, it is not reversible error on behalf of a party to the action. *Wigmore, ibid.,* and other authorities named below.

In making the above ruling, we realize that it is not in conformity with one phase of the *Chesapeake Club* case, just referred to, and, insofar as that case is to be construed as a general holding to the effect that a defendant in a criminal case is entitled to a new trial because privileged, though material, testimony of a witness, who is not a party, has been admitted in evidence, we decline to follow the same."

See also *Forrester v. State,* 224 Md. 337. Thus we think that the testimony of Craft was competent evidence and, being clearly material, was admissible against the appellant. Even assuming that the testimony was privileged, which we need not decide, its admission in evidence did not constitute reversible error. The appellant relies on *Royal v. State,* 236 Md. 443 and *Shifflett v. State,* 245 Md. 169, urging that in compelling Craft to testify the trial court did not follow the guidelines as to procedure established by those cases. We do not find them apposite. In *Royal* the Court found no impropriety in the trial court not requiring the witnesses called by the defendant to testify in his behalf. The Court said, page 448:

"In circumstances where the court is satisfied that the claim has a substantial basis, the mere refusal to testify under a claim of privilege may justify the upholding of the privilege."

But the Court again stated that "* * * the privilege against self-incrimination is a personal one and only the witness may assert it." p. 447. *Shifflett* was an appeal from a contempt citation for refusal to testify and the Court held that since no questions were asked by the prosecuting attorney with regard to matters material to the criminal cases then on trial, there was no contempt.

It is clear that Craft was a principal in the second degree. He drove the automobile used by the actual perpetrators of the crimes and was in close proximity and contiguity to the im-

mediate place where the crimes were committed, in a position to render aid and assistance. *Vincent v. State,* 220 Md. 232; *Agresti v. State,* 2 Md. App. 278. He was, therefore, an accomplice. *Barton v. State,* 2 Md. App. 52. His testimony being admissible, the question is whether it was sufficiently corroborated, the appellant contending that it was not.

At common law a verdict of the jury would not be set aside merely because founded on the evidence of an accomplice which was not corroborated. *Luery v. State,* 116 Md. 284. Some jurisdictions do not require corroboration. See *State v. Carey,* 76 Conn. 342, 56 A. 632; *Burns v. People,* 148 Colo. 245, 365 P. 2d 698; *Commonwealth v. Taber,* 350 Mass. 186, 213 N. E. 2d 868; *Lyda v. United States,* 321 F. 2d 788 (9th Cir.). In some jurisdictions it is required by statute. See *People v. Kress,* 284 N. Y. 452, 31 N. E. 2d 898; *Hubbard v. State,* 35 Ala. App. 211, 45 So. 2d 795; *People v. Lyons,* 50 Cal. 2d 245, 324 P. 2d 556. In at least one jurisdiction other than Maryland it is required by judicial decision. See *Sherrill v. State,* 204 Tenn. 427, 321 S. W. 2d 811.

In Maryland the rule was formulated in *Luery v. State, supra.* After discussing the reasoning behind the development of the rule, the Court said, pp. 293-294:

> "Hence it would seem to be safer to require some corroboration * * *. As the reason for the rule, as adopted by most Courts, is that the testimony of an accomplice alone and unsupported is regarded as too doubtful to be safe, the important matter is to have him supported in at least some of the material points involved, tending to show the guilt of the accused."

It said, however, that the trial courts should not require too much in the way of corroboration and that it is not required to have sufficient evidence to convict, exclusive of the accomplice's testimony. In *Wright v. State,* 219 Md. 643, the Court said, page 648:

> "In all of the cases which followed the *Luery* case, *supra,* during the period from 1911 to 1950, the rule was restated and the judgments were either affirmed

> or the appeals dismissed because the sufficiency of corroboration was reviewable only on a motion for a new trial in the lower court and not on appeal."

Since December 1, 1950 (the effective date of the amendment to § 5 of Article XV of the Constitution of Maryland giving the Court of Appeals the right and duty—if and when a question is properly raised—to review the legal sufficiency of the evidence in a criminal case) to the decision in *Wright,* the sufficiency of the corroboration of an accomplice's testimony was considered in a number of cases, and was deemed sufficient because it "* * * consisted of the behavior and conduct of the accused, or his presence at the scene of the crime under suspicious circumstances, or the ample and sufficient testimony of non-accomplice witnesses in support of *some of the material points* of the accomplice's testimony." 219 Md. 648. In *Wolf v. State,* 143 Md. 489, the Court had said, by way of dictum, that the requirement was that the corroborative evidence "* * * should tend to sustain the charge with respect to 'some of the material points involved' [quoting *Luery v. State, supra*]." In *Wright* the Court thought it salutary to discuss more fully what was meant by "corroborate" and "some of the material points" or facts. Citing 1 Underhill, *Criminal Evidence* (5th Ed. 1956) § 185; Wigmore *Evidence* (3rd Ed. 1940) § 2059 b and c, and *Polansky v. State,* 205 Md. 362, it restated the rule as follows, p. 650:

> "[N]ot much in the way of corroboration is required and * * * it is not necessary in and of itself for the corroborative evidence to be sufficient to convict, yet the corroborative evidence must support the testimony of the accomplice as to some of the material facts tending to show that the accused *was either identified with the perpetrators of the crime or had participated in the commission of the crime itself."* (emphasis supplied)

This restatement of the rule is in accord with the reasons requiring the testimony of an accomplice to be corroborated as set forth in *Watson v. State,* 208 Md. 210 at 217:

"The reason for the rule requiring the testimony of an accomplice to be corroborated is that it is the testimony of a person admittedly contaminated with guilt, who admits his participation in the crime for which he particularly blames the defendant, and it should be regarded with great suspicion and caution, because otherwise the life or liberty of an innocent person might be taken away by a witness who makes the accusation either to gratify his malice or to shield himself from punishment, or in the hope of receiving clemency by turning State's evidence."

It is also in accord with the rule as followed in Tennessee where the rule is judicial and not statutory. It was said in *Sherrill v. State, supra,* 321 S. W. 2d 811, 815:

"The corroborative evidence must of its own force, independently of the accomplice's testimony, tend to connect the defendant with the commission of the crime."

The rule as established by statute in New York, Alabama and California is to like effect. In *People v. Kress, supra,* the Court said that the New York *Code of Criminal Procedure,* § 399 specifically requires that the evidence connect the defendant with the crime itself. The Code of Alabama (1958) Title 15 § 307 requires corroborative evidence tending to connect the defendant with the commission of the offense and such corroborative evidence is not sufficient if it merely shows the commission of the offense or the circumstances thereof. In *People v. Lyons, supra,* the Court said, 324 P. 2d 562 that such evidence must tend to connect the defendant with the commission of the offense and implicate him. See 1 Underhill, *Criminal Evidence* (1956 Ed.) § 184, pp. 399-400.

We think it clear that the rule in this State is that evidence corroborating the testimony of an accomplice is not sufficient if it merely shows the commission of the offense or the circumstances thereof and that some of the material facts of the accomplice's testimony which it must support are such material facts which tend to show that the accused was either identified with the perpetrators of the crime or had participated in the

commission of the crime itself. "Whether the testimony has in fact been sufficiently corroborated must, of course, depend upon the facts and circumstances, and the inferences deducible therefrom, in each case." *Wright v. State, supra,* at page 650. The Court of Appeals and this Court in confirming judgments when the question has been raised, have found corroborative evidence tending to identify the defendant with the perpetrators of the crime, or tending to show his participation in the commission of the crime or both.[4] In *Keene v. State,* 2 Md. App. 325 we reversed judgments rendered on receiving stolen goods because "* * * there was no evidence whatsoever to identify the accused with the perpetrators of the crime or to show that he had participated in the commission of the crime itself * * *" except for the testimony of the accomplice.

From the record in the instant case we find no corroborative evidence supporting the testimony of the accomplice, Craft, as to some of the material facts tending to show that the appellant was identified with the perpetrators of the crime or had participated in the commission of the crime itself. Craft testified that about 12:15 A. M. on January 2, 1965 he, the appellant, Goode and Kitt planned to rob "Little Melvin," a narcotics pusher. Melvin failed to appear at his house after a wait of some three

---

4. For cases in which the corroborative evidence tended to identify the defendant with the perpetrators of the crime see: *Ferraro v. State,* 200 Md. 274; *Wright v. State,* 219 Md. 643; *Mulcahy v. State,* 221 Md. 413; *Forrester v. State,* 224 Md. 337; *Boggs v. State,* 228 Md. 168; *McKenzie v. State,* 236 Md. 597; *Barton v. State,* 2 Md. App. 52; *Kitt v. State,* 2 Md. App. 306.

For cases in which the corroborative evidence tended to show the defendant's participation in the crime itself see: *Polansky v. State,* 205 Md. 362; *Brown v. State,* 210 Md. 301; *Judy v. State,* 218 Md. 168; *DeHart v. State,* 227 Md. 239; *McDowell v. State,* 231 Md. 205; *Tucker v. State,* 237 Md. 422; *O'Connor v. State,* 1 Md. App. 627; *Bright v. State,* 1 Md. App. 657; *Wilson v. State,* 2 Md. App. 210; *Johnson v. State,* 2 Md. App. 235.

For cases in which the corroborative evidence tended both to identify the defendant with the perpetrators of the crime and to show his participation in the crime itself see: *Nolan v. State,* 213 Md. 298 (the corroborative evidence was sufficient but the judgment was reversed for other reasons); *Novak v. State,* 214 Md. 472; *Booth v. State,* 229 Md. 528.

and one-half hours and the quartet formulated plans for another robbery. Pursuant to the plan, they drove in Craft's "cream colored yellow" '62 Chevrolet to a lot "down the street behind" Burman's Cafe, the place of the intended robbery. Craft remained in the automobile while the other three went toward the cafe. The appellant and Goode were to go inside while Kitt remained outside. Shortly after the three left the automobile, Craft saw a "little boy come by." The boy had on a hood with the eyes and nose cut out. Kitt came back to the automobile, followed a few seconds later by the appellant and Goode. The appellant went to the rear of the automobile and placed a bag over the license plate and then joined Kitt, Goode and Craft in the automobile. Kitt had a pistol with a white handle and pointed the pistol at Goode because Goode said he had shot someone in the cafe but it was an accident. The appellant grabbed Kitt's arm saying that "it wasn't any sense in him shooting" Goode. The appellant and Kitt left Craft's automobile shortly after the killing, at which time Goode gave some money to each of them. Craft did not remember how any of his companions were dressed.

By stipulation, the State read into evidence the testimony of three witnesses at the first trial, James C. Burman, the owner of the property (the license was in his wife's name), Wayne Fleming, a young newsboy, and Leon Marchbanks, a police officer. Burman arrived at the cafe about 6:30 A. M. on January 2, 1965, saw blood all over the floor and an open cash register with $23.00 missing therefrom. Fleming, delivering his papers, saw two men inside the cafe about 6:05 A. M. on January 2, 1965. One had on a green jacket. He walked around the corner and two men ran around the corner with bags in their hands. He noticed that one man was a Negro. He gave no description of the other men. They ran to a '62 or '63 white Chevrolet. "I think they opened the trunk. They either put something in or took something out and they got in the car, and less than thirty seconds later the car was gone down into the street." Fleming was wearing a face mask on the morning of the incident because it was cold. The mask was introduced in evidence upon identification by Fleming. Marchbanks, "working the radio car" on January 2, 1965, received a call to go to Bur-

man's Tavern to investigate a holdup. He discovered the bartender, Hazard, had been· shot. Hazard told him that "two colored males came into the bar and ordered a cup of coffee and a bottle of vodka, and when he set the articles on the bar, one subject produced a gun and walked around behind the bar and started going through the cash register, told him to lay on the floor, and Mr. Hazard told him there was some money in a bottom drawer, and as he went to get the money out of the drawer, he said that's when the subject shot him while he was laying on the floor, and at that time both of them run outside the bar."

The autopsy report, also admitted in evidence by stipulation, established that Hazard died of a gunshot wound, and that his death was a homicide, incurred during a holdup at Burman's Cafe, wherein the deceased was found.

The evidence adduced by the State corroborated the accomplice's testimony as to the commission of the offense and the circumstances thereof but it did not support his testimony as to some of the material facts tending to show that the appellant was either identified with the crime or had participated in its commission. There was no corroborative evidence, for example, that the appellant was in the company of the perpetrators either shortly before or shortly after the crime, or that he was in the vicinity of the crime when it was committed, or that he was in possession of the murder weapon or of some of the proceeds of the robbery· or that he was seen in Craft's automobile. In short, there was no evidence to connect the appellant with the perpetrators or the commission of the crime except the testimony of the accomplice and this is not sufficient. In *Kitt v. State, supra,* in which we found the corroborative evidence to be sufficient, there was the testimony of a non-accomplice, Evelyn Knight, that between 6:00 A. M. and 7:00 A. M. on the morning of January 2, 1965 the appellant and Kitt came to her house and that Kitt had a gun with a white handle. Kitt also acknowledged to a police officer that he had seen Craft, Goode and the appellant together prior to the commission of the crime. Mrs. Knight was called as a witness by the State in the instant case, but upon objection, her testimony was ruled inadmissible. We find that there was not sufficient corroboration of the tes-

timony of the accomplice to sustain the conviction. We must, therefore, reverse the judgment and shall remand the case for a new trial.

Although the case is remanded for a new trial, it is deemed advisable to consider certain of the appellant's other contentions.

## DOUBLE JEOPARDY

The appellant contends that he was twice placed in jeopardy. This contention is based on two grounds: first, that "jeopardy attached at the moment of the subsequent indictment" returned against him after the decision in *Schowgurow v. State, supra,* and, second, that he was placed in jeopardy at his first trial in the Circuit Court for Baltimore County, resulting in the granting of a new trial on the murder charge because of the form of verdict of the jury.

Among the rights of an accused in criminal proceedings set forth in Amendment V to the Constitution of the United States is that no person shall "* * * be subject for the same offense to be twice put in jeopardy of life or limb * * *." This provision has not as yet been held to be applicable to state court prosecutions under the Due Process Clause of the Fourteenth Amendment.[5] *Ruckle v. State,* 230 Md. 580; *Gee v. State,* 2 Md. App. 61. However, in Maryland, protection against double jeopardy is available by way of the common law. *State v. Barger,* 242 Md. 616; *Smith v. State,* 1 Md. App. 297. In 1863, in *Hoffman v. State,* 20 Md. 425, 434 the Court of Appeals stated the common law meaning and adopted it:

> "At common law it meant nothing more than that where there had been a final verdict either of acquittal or conviction, on an adequate indictment, the defendant could not be a second time placed in jeopardy for the particular offense."

5. The issue was posed in *Cichos v. State,* 385 U. S. 76, 87 S. Ct. 271 but the Supreme Court did not reach it, dismissing the writ of certiorari as improvidently granted. Rehearing was denied. 385 U. S. 1020. In *State v. Adams,* 196 Md. 341, 344 the Court of Appeals said that the prohibition of double jeopardy in the Fifth Amendment was not a requisite of due process under the Fourteenth Amendment.

24

In *Hoffman,* the following proceedings were entered of record, p. 430:

> "[B]ecause it appears to the said court here, that after the said jury had been sworn, and the above indictment had been read to them, and they had been charged in the usual way by the clerk of the court here, several witnesses for the State who had been in attendance up to that period, had been discovered to be absent, and that after adjournment to the next day, the said witnesses were still absent, which said witnesses had been duly summoned and put under security for their presence in court upon the trial of the case, and attachments against them having been issued and returned *'non est,'* no statement having been made or evidence offered to the jury in the said case, therefore, by order of the said court here, the said jury are discharged, and are wholly discharged from giving any verdict of and upon the premises above mentioned in the said case * * *."

The defendant objected to the discharge of the jury and moved the court to discharge him on the ground that he could not be put twice in jeopardy for the same offense. Applying the common law meaning, the Court held that he was not "for the same offense twice put in jeopardy of life or limb," and that the discharge of the jury, being a matter of discretion of the trial court, was not a subject of review on a writ of error. The defendant based his contention on the double jeopardy clause of the Fifth Amendment. The Court did not discuss the applicability of the clause to state prosecutions (The 14th Amendment was not declared ratified until July 28, 1868) but interpreted the clause in accordance with the authorized exposition established at its adoption, stating that, "Being transformed from a legal maxim to a constitutional clause, does not, it is apprehended, change the meaning of words, although it makes the right they guaranty, more solemn and sacred." p. 433. It found that in the decisions of the English courts antecedent to the Constitution the term "twice in jeopardy" had been construed as equivalent to *autre fois acquit* or *autre fois convict* and that this construc-

tion had been followed by the Supreme Court of the United States and by the courts of Massachusetts, New York and Mississippi. Thus, it said, no man is in jeopardy until verdict is rendered. The common law meaning of double jeopardy as stated in *Hoffman* was followed in *Anderson v. State,* 86 Md. 479, the Court holding that the fact that a jury in a criminal case was discharged because unable to agree upon a verdict was no bar to a subsequent trial "* * * because there was no verdict by the jury, and no man is in jeopardy until verdict has been rendered." p. 482. *Hoffman* was cited in *Robb v. State,* 190 Md. 641, 650 as authority for the statement that the rule against double jeopardy is not set out in the Maryland Constitution but is applied in this State as a doctrine of the common law and also in *State v. Barger,* 242 Md. 616, 619 where the rule as set forth in *Hoffman* was quoted in a discussion of "The Principle of Double Jeopardy". We find no case in this State holding directly or by inference that the common law meaning of double jeopardy as enunciated in *Hoffman* is not now controlling.[6] The effect of the entry of a *nolle prosequi* is not inconsistent with this common law meaning. If entered without the consent of the defendant after trial has begun, jeopardy attaches because it

---

**6.** *Downum v. United States,* 372 U. S. 734, a federal prosecution, decided one hundred years after *Hoffman* on comparable facts is contrary to the holding in *Hoffman*. The Court found that the defendant had been placed in jeopardy, the jury having been discharged after being selected and sworn because witnesses for the prosecution were absent, saying, p. 736:

"At times the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him may be subordinated to the public interest —when there is an imperious necessity to do so. [However] the discretion to discharge the jury before it has reached a verdict is to be exercised 'only in very extraordinary and striking circumstances,' [because] the prohibition of the Double Jeopardy Clause is 'not against being twice punished, but against being twice put in jeopardy.' "

We do not have before us and do not decide whether the fact situation presented in *Hoffman* would today afford an accused relief, for reasons other than double jeopardy, as, for example, under the due process clause of the Fourteenth Amendment.

operates as an acquittal. Hochheimer, *The Laws of Crimes and Criminal Procedure,* 2nd Ed. § 152, p. 171. For entry of a *nolle prosequi* before trial see *Barrett v. State,* 155 Md. 636; for such entry after trial has begun see *Friend v. State,* 175 Md. 352. The great majority of the cases in this jurisdiction in which the question of double jeopardy is presented involve the question after a verdict of acquittal or conviction. It has been established that an accused cannot be again tried after a verdict of acquittal. As the Court said in *State v. Shields,* 49 Md. 301, 303 (quoted in *State v. Adams,* 196 Md. 341, 348) :

> "It has always been a settled rule of the common law that after an acquittal of a party upon a regular trial on an indictment for either a felony or a misdemeanor, the verdict of acquittal can never afterward, on the application of the prosecutor, in any form of proceeding, be set aside and a new trial granted, and it matters not whether such verdict be the result of a misdirection of the judge on a question of law, or of a misconception of fact on the part of the jury."

See also *State v. Reed,* 12 Md. 263. In *Barger v. State,* 235 Md. 556, the accused was indicted for murder and found by a jury to be guilty of murder in the second degree. On appeal, the Court reversed the judgment and remanded the case for a new trial because the trial court erred in denying an advisory instruction with regard to the right of the accused to assert the defense of self defense. Following remand the State indicated it intended to retry the accused as if he were being tried for the first time and the accused moved to dismiss the indictment on the ground of double jeopardy. The lower court granted the motion "as to murder in the first degree" and the State appealed, *State v. Barger, supra.* The Court held "* * * that where there has been a regular trial on a valid indictment and a finding of not guilty of murder in the first degree the accused cannot thereafter be tried at the instigation of the State for the offense of first degree murder" and "* * * the appeal and granting of a new trial did not have the effect of waiving the question of double jeopardy as to first degree murder." pp. 625-626, 628. In reaching the decision the Court cited three cases as sufficient

to illustrate the effect of the common law rule as it has been consistently applied in this State—*State v. Shields, supra; Cochran v. State,* 119 Md. 539; *State v. Rosen,* 181 Md. 167. In each the accused had been acquitted on a valid indictment and further prosecution was barred. Although the rule against double jeopardy also forbids a second trial for the same offense when the accused was convicted, *Gilpin v. State,* 142 Md. 464, this does not preclude a retrial granted on remand upon reversal of the judgment on appeal.[7] See *State v. Williams,* 5 Md. 82. So in *State v. Barger, supra,* the Court held that Barger could be tried again on second degree murder or manslaughter. Whether the rationale be that there is no conviction outstanding when judgment is reversed or that a waiver is accomplished by the affirmative action of the defendant when he procures a judgment against him to be reversed or set aside on appeal, the Court of Appeals and this Court have consistently permitted the accused to be again tried upon a reversal. Other cases in which the question of double jeopardy has been presented are consistent with the rule. If an accused has not been tried on a valid indictment, he has not been put in jeopardy and may be tried again. *Kearney v. State,* 48 Md. 16, 27. The same is true of trial on an invalid information. *Stearns v. State,* 81 Md. 341, 347; State ex rel *Shatzer v. Warden,* 192 Md. 728, 729; *Basta v. State,* 133 Md. 568, 572. It is noted that each of *Kearney, Stearns, Shatzer* and *Basta* cited *Hoffman.* Defective delinquent proceedings do not place one in jeopardy, *Eggleston v. State,* 209 Md. 504. Punishment by prison authorities for escape is no bar to prosecution for escape. *Ford v. State,* 237 Md. 266. Discharge at a preliminary hearing before a magistrate does not bar a subsequent prosecution, *Wampler v. Warden,* 231 Md. 639. A prosecution in a magistrate's court for contributing to the delinquency of a minor, over which that court had exclusive jurisdiction, was no bar to prosecution in a circuit court for statutory rape, over which the magistrate had no jurisdiction, *Bennett v. State,* 229 Md. 208.

---

7. In *Gilpin* the Court found that the accused was not put twice in jeopardy when he was tried and convicted of conspiracy to rob after being acquitted at a former trial of the robbery of the same person as the offenses were separate and distinct.

Having determined that the common law meaning of double jeopardy, as stated in *Hoffman v. State, supra,* is controlling in Maryland, we apply it to the facts before us. Clearly the first ground urged by the appellant to support his contention that he was twice put in jeopardy—that he was placed in jeopardy at the moment the second indictment was returned against him —is without merit. At that time he had not been brought to trial under the first indictment; he had not been even once placed in jeopardy. And even if he had been previously tried under the first indictment which he elected to declare invalid, jeopardy would not have attached. *Sadler v. State,* 1 Md. App. 383.

The factual situation with regard to his second ground—that he was placed in jeopardy at his first trial—is that the jury at that trial returned a verdict of guilty on the murder indictment without specifying whether it was murder in the first or second degree and was discharged without so finding. The question is whether the verdict was a final one of acquittal or conviction. The verdict was not pursuant to Md. Code (1967 Repl. Vol.) Art. 27, § 412 which provides that on finding a person guilty of murder, the jury shall "* * * ascertain in their verdict whether it be murder in the first or second degree * * *," and was, therefore, improper. In *State v. Sutton,* 4 Gill 387, the indictment contained two counts, first for rape and second for assault with intent to rape and the jury, making no finding on the first count, rendered a verdict of guilty on the second count. The lower court discharged the defendant and the State sued out a writ of error. The Court found, "This verdict, therefore, in the language of the books, was ill, and should have been set aside by the Court." p. 391. It did not agree with the course pursued by the lower court in arresting judgment and discharging the accused, stating, p. 391:

> "It cannot be said with correctness, that a verdict, which in legal contemplation is a nullity, could jeopard the life or limb of a party. * * * The verdict was imperfect, and the matter in issue not ascertained, as that the Court could render any judgment thereon, and therefore it was a mis-trial. The County Court

erred in discharging the prisoner; the Court should have awarded a *venire de novo.*"

In *Ford v. State,* 12 Md. 514, the Court, noting that the statute required that the jury, on a conviction of murder, ascertain in their verdict whether it be murder in the first or second degree, found that a verdict of "guilty" was not sufficient, and said, at 549:

> "In the eye of the law, there has been no valid and sufficient verdict; and, as a consequence, there must be a new trial. This case is not like *Cochrane v. State,* 6 Md. 400, where there was a necessity to find a new indictment, because of the defect in the one on which the accused was arraigned and tried. In this case there is no defect in the indictment, and the party can be tried again on it, as in *State v. Sutton,* 4 Gill, 494. This was a mistrial, and a *venire de novo* must be awarded."

In *Williams v. State,* 60 Md. 402, the foreman declared the verdict of the jury to be guilty of murder in the first degree. On a poll of the jury, each juror responded guilty without specifying the degree of murder. The Court held the verdict a nullity. It said, at 404, "[T]he verdict rendered on the poll is a defective verdict, and we must reverse the judgment and award a new trial." In *Price v. State,* 159 Md. 491, the jury returned a verdict of guilty of murder in the first degree without a finding on the issue of sanity which had been raised. The Court said, p. 500:

> "As in the crime of murder it is indispensable for the jury to find the degree in order for the court to know what sentence or judgment may be given, so where, after indictment, the defence is taken on insanity, it it similarly made requisite by statute that the party's sanity both at the time of the alleged offence and of trial must be found by verdict before a sentence or judgment may be passed."

It held, p. 503:

> "On the fatally incomplete verdict given in the appeal at bar the trial court had no jurisdiction to pro-

ceed to a judgment, which, being a nullity, is no bar to a second trial, and the judgment entered should be reversed and the case should be remanded for a second trial under a writ of *venire facias de novo.*"

We hold that the verdict of the jury on the murder indictment at the first trial of the appellant was a nullity and the appellant was not thereby either convicted or acquitted of murder in the first or second degree. There being no final verdict either of acquittal or conviction, the appellant was not put in jeopardy at that trial and was, therefore, not put twice in jeopardy by the first retrial, and will not be put twice in jeopardy by retrial for murder on remand upon our reversal of the judgment of the second trial.

## STATEMENTS OF THE APPELLANT

At the trial Craft testified that when the appellant returned to the automobile after the crime he said he put a bag over the license and shortly afterwards, in preventing Kitt from shooting Goode, said that "it wasn't any sense in him * * * shooting him." The appellant claims it was error to allow this testimony because those statements had not been furnished by the State in answer to his motion for discovery. We think the statements were not such "oral statements" as to be within the purview of Maryland Rule 728 and were not inadmissible for the reason urged. *Barton v. State,* 2 Md. App. 52.

## THE LEGALITY OF THE ARREST

We need not decide if the arrest of the appellant was without sufficient probable cause as he contends. No "fruits" of the arrest were admitted in evidence against him and even if the arrest were illegal, that does not, in and of itself, preclude a trial or vitiate a conviction. *Hutchinson v. State,* 1 Md. App. 362; *Nadolski v. State,* 1 Md. App. 304; *Powell v. State,* 1 Md. App. 495.

## THE CONVICTION OF A CO-DEFENDANT

The appellant alleges that when called to trial in Baltimore City Goode pleaded guilty to murder in the second degree and

that the plea was accepted by the trial court. He contends that, in view of this, he should not be convicted of murder in the first degree, especially since Goode was the one who pulled the trigger. The appellant cites no authority, and, we doubt the existence of any, to support this contention. If it had merit its logical extension would be that the acquittal of a co-defendant would require the acquittal of all other co-defendants. At best it would preclude the trier of facts from an independent determination of the case before it. We note that neither the fact of Goode's conviction nor the testimony of the witnesses examined by the court upon Goode's confession in order to determine the degree of murder as required by Code, Art. 27, § 412 were offered in evidence at the appellant's trial. The contention for this reason alone has no merit on appeal. *Johnson v. State,* 2 Md. App. 235. But in any event we do not think that such evidence would be admissible at the guilt stage of the proceedings if proffered. The fact of the conviction or acquittal of one person charged with a crime is neither relevant nor material to the issue of the guilt or innocence of another person charged with the same crime as a co-perpetrator. Contrary to the position taken by the appellant, we feel that the admission of evidence of the conviction of a co-defendant at a prior trial would be prejudicial error.

## THE APPLICABILITY OF MIRANDA

The first trial of the appellant was held on March 7, 1966 and March 8, 1966 resulting in a verdict of the jury on the murder indictment as hereinbefore set forth and convictions of robbery and attempted robbery with a deadly weapon. In affirming the judgments on the robbery offenses, we found the statement of the appellant properly admitted in evidence. We held that it had been freely and voluntarily given and that the standards enunciated in *Miranda v. Arizona,* 384 U. S. 436, decided June 13, 1966 were not applicable as *Miranda* is not retroactive. *Boone v. State,* 2 Md. App. 80, 93-97. Because of the defective verdict on the murder charge, the appellant was granted a new trial with respect to that offense on motion made by him. The retrial was subsequent to the decision in *Miranda,*

and at that trial, the lower court held that the statement was inadmissible because *Miranda* was then applicable and its procedural safeguards had not been observed. The question whether the *Miranda* warning requirements, as the prerequisite for the admissibility of a statement, although otherwise freely and voluntarily made, are to be applied to retrials occurring after June 13, 1966 of cases that were originally tried on a valid indictment prior to that decision has not been determined by the Court of Appeals and is a matter of first impression before this Court.

We feel it neither logical nor reasonable that the case should be retried under a rule, not prevailing at the first trial, making the statement, which was admissible at the first trial, inadmissible on retrial. We think it not in the best interest of public justice for *Miranda* to be so applicable. Fundamental fairness flows both to the State and to a defendant, not only to one to the exclusion of the other. So feeling, it is necessary to determine whether we are precluded from holding *Miranda* to be inapplicable under the circumstances here before us, and the answer lies within the four corners of *Johnson v. New Jersey,* 384 U. S. 719. In *Johnson,* the Supreme Court, called upon to determine whether *Miranda* (and also *Escobedo v. Illinois,* 378 U. S. 478) should be applied retroactively, held that "* * * *Miranda* applies only to cases in which the trial began after the date of our decision * * *", June 13, 1966. p. 721. The holding was restated throughout the opinion. "All of the reasons set forth above for making *Escobedo* and *Miranda* nonretroactive suggest that those decisions should apply only to trials begun after the decisions were announced." p. 732. "Prospective application only to trials begun after the standards were announced is particularly appropriate here." p. 732. "In the light of these additional considerations, we conclude that *Escobedo* and *Miranda* should apply only to cases commenced after those decisions were announced." p. 733. "This we have done in *Miranda* (laid down additional guidelines), and these guidelines are therefore available only to persons whose trials had not begun as of June 13, 1966." p. 734. We cannot conclude that by using the word "commenced" once the Court intended a different significance than it intended when

it used the words "began" or "begun." "Begin" is defined in Webster's Third New International Dictionary of the English Language, unabridged, 1968, as "to perform or execute the first part of an action, activity or procedure" and "commence", given in explanation thereunder, as "show occurrence or performance of first steps or stages." The definition, therefore, does not preclude, but rather supports, an inference that a case coming up for retrial on the granting of a motion or a reversal on appeal "began" at the first trial where the occurrence or performance of the first steps or stages was shown. We think that the language used does not compel us to close our eyes to the fact that the trial of the appellant actually began prior to *Miranda* and that, for the purposes here considered, the second trial for the same offense and on the same facts, as an incident to the granting of the motion because of the defective verdict, simply amounted to a continuance of the same case looking toward a final judgment of either acquittal or conviction. In context, we take "began," "begun" and "commenced" in *Johnson* to refer only to those trials in which the defendant was *first* called to trial after the stated date.

We are inclined toward this view by the failure of the Court to "* * * find any persuasive reason to extend *Escobedo* and *Miranda* to cases tried before those decisions, even though the cases may be on direct appeal", it being "* * * clear that there are no jurisprudential or constitutional obstacles to the rule * * *" adopted in *Johnson,* 384 U. S. at p. 733. As was said in *State v. Vigliano,* 232 A. 2d 129 (N. J. 1967), "If such reliance on previous law is sufficient reason not to apply *Miranda* to cases tried and still on direct appeal on June 13, 1966, it would seem that such reliance should have the same operative effect if the appeal results in a reversal and order for a new trail" or if a new trial is granted upon motion duly made.[8] For

---

**8.** This thought was apparent in *Stovall v. Denno,* 388 U. S. 293, 87 S. Ct. 1967 making rules concerning the conduct of line-ups, announced in *United States v. Wade,* 388 U. S. 218, 87 S. Ct. 1926 and *Gilbert v. California,* 388 U. S. 263, 87 S. Ct. 1951, applicable only to line-ups conducted after the common date of the three decisions. The Court said:

"We also conclude that, for these purposes, no distinction is justified between convictions now final, as in the

the reviewing court not to consider the *Miranda* rules on appeal, but to have them suddenly become applicable on retrial after a reversal for reasons foreign to such rules, seems to us to be completely illogical. We think that the Supreme Court did not so intend. See *State v. Vigliano,* 232 A. 2d 129 (N. J. 1967). We believe that the language of the Court in discussing its holding is also significant. It said, 384 U. S. at p. 732:

> "*Future defendants* will benefit fully from our new standards governing in-custody interrogation, while *past defendants* may still avail themselves of the voluntariness test. Law enforcement officers and trial courts will have fair notice that statements taken in violation of these standards may not be used against an accused. Prospective application only to trials begun after the standards were announced is particularly appropriate here. Authorities attempting to protect the privilege have not been apprised heretofore of the specific safeguards which are now obligatory." (emphasis supplied)

We also find support for our view in the reasons of the Court for its holding. It listed three factors influencing its decision: the purpose of the *Miranda* standards; reliance on pre-*Miranda* rules; and the effect on the administration of the criminal laws. It noted that, although the prime purpose of the *Miranda* rulings was "* * * to guarantee full effectuation of the privilege against self-incrimination * * * they encompass situations in which the danger is not necessarily as great as when the accused is subjected to overt and obvious coercion." 384 U. S. at p. 729-730. Thus, in the absence of the *Miranda* safeguards, the accused "* * * may invoke a substantive test of voluntariness which, because of abusive practices, has becoming increasingly meticulous through the years." So the integrity of the fact finding process is not as substantially im-

---

instant case, and convictions at various stages of trial and direct review. We regard the factors of reliance and burden on the administration of justice as entitled to such overriding significance as to make that distinction unsupportable." 87 S. Ct. at 1972.

proved by *Miranda* as it has been by other of its decisions. It found that law enforcement officers had been relying on pre-*Miranda* rules in obtaining confessions and that retroactive application would not have the justifiable effect of curing error committed in disregard of constitutional rulings already clearly foreshadowed. It felt that retroactive application of *Miranda* "* * * would seriously disrupt the administration of our criminal laws." 384 U. S. at p. 731. In the light of those various considerations it concluded that *Miranda* should not be applied retroactively. The presence of a disrupting effect similar to that considered by the Supreme Court as well as the import of the other two criteria, reinforced by the language of the Court in stating its holding and the exclusion of cases in which direct appeals were pending at the time of the decision, leads us to conclude that we are not compelled by *Johnson* to apply *Miranda* to retrials such as the one before us. The pre-*Miranda* rules, including those announced in *Escobedo,* were available to the appellant to protect the integrity of the fact finding process. Holding *Miranda* applicable to his retrial would effect no significant improvement therein and would be inconsistent with the apparent intention of the Supreme Court to give stability and uniformity to cases in which the trial began before the date of that decision. See *People v. Worley,* 227 N. E. 2d 746 (1967).

Other jurisdictions have considered the question with disparate results. The following cases held that the *Miranda* requirements do not apply in retrials: *Jenkins v. State,* 230 A. 2d 262 (Del.) ; *People v. Worley,* 227 N. E. 2d 746 (Ill.) ; *State v. Vigliano,* 232 A. 2d 129 (N. J.) ; *Commonwealth v. Brady,* Pa. D. & C. 2d (Crawford Co., Pa.), 1 Cr. Law Rep. 2305 (17 July 1967). Contrary cases are: *Gibson v. United States,* 363 F. 2d 146 (5th Cir. 1966) ; *State v. Brock,* 101 Ariz. 168, 416 P. 2d 601; *People v. Doherty,* 429 P. 2d 177 (Cal.) ; *State v. Ruiz,* 421 P. 2d 305 (Hawaii) ; *State v. McCarther,* 416 P. 2d 290 (Kan.) ; *Creech v. Commonwealth,* 412 S. W. 2d 245 (Ky.) ; *State v. Jackson,* 155 S. E. 2d 236 (N. C.) ; *State v. Shoffner,* 143 N. W. 2d 458 (Wis.). It is noted that with the exception of *People v. Doherty, supra,* the cases holding that the *Miranda* requirements apply at retrials

contain little, if any, discussion of the problem and we do not find them to be persuasive. *People v. La Belle,* 53 Misc. 2d 111, 277 N. Y. S. 2d 847 (Rensselaer County Ct.) held that *Miranda* did not apply to retrials but a majority of the New York Supreme Court Appellate Division, Third Department held to the contrary in *People v. Sayers,* 284 N. Y. S. 2d 481.

We find that the trial of the instant case began on March 7, 1966, prior to the decision in *Miranda v. Arizona, supra.* We feel, within the meaning of *Johnson v. New Jersey, supra,* that neither the fact of retrial upon grant of motion made by the appellant nor the fact of retrial upon reversal of judgment and remand by this Court on appeal by him, although both subsequent to the decision in *Miranda,* constitutes the case as one in which the trial began after June 13, 1966. Therefore, *Miranda* does not apply. The guidelines established by that decision were not available to the appellant at his original trial, were not available to him at the retrial had and will not be available to him at the retrial to be had.

Contentions of the appellant, properly before us, not herein disposed of, are not considered in view of our reversal of the judgment.

Various documents were submitted to this Court by the appellant in proper person entitled "Supplement to Brief," "Amendment to Supplement" and "Additional Brief." Although the Maryland Rules provide for the filing of a reply brief, Rule 1030 a 3, there is no provision for the filing of supplemental, additional or amended briefs. The contentions in the various documents submitted are not properly before us and we do not consider them.

> *Judgment reversed; case remanded for a new trial.*

THOMPSON, J., dissenting:

Although I concur with the result of the majority decision I cannot agree that the standards of voluntariness required by *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 will not apply to a retrial of this case. The majority interprets *Johnson v. New Jersey,* 384 U. S. 719, 86 S. Ct.

1772, 16 L. Ed. 2d 882, which held that *Miranda* would not apply to cases brought to trial before June 13, 1966 to refer to original trials only and not to retrials.

In *Johnson,* the Supreme Court had several alternatives. It could, of course, have applied the classic doctrine of *Gideon v. Wainwright,* 372 U. S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (on right to counsel) that a court's decision is completely retroactive; or it could have applied the same rule it had applied in *Linkletter v. Walker,* 381 U. S. 618, 85 S. Ct. 1731, 14 L. Ed. 2d 601, which held that *Mapp v. Ohio,* 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (on Search & Seizure) was applicable to all cases in which a state court decision had not become final prior to announcement of *Mapp*; or it could have applied the rule it subsequently applied in *Stovall v. Denno,* 388 U. S. 293, 87 S. Ct. 1967, which held that *United States v. Wade,* 388 U. S. 218, 87 S. Ct. 1926 and *Gilbert v. California,* 388 U. S. 263, 87 S. Ct. 1951, (on line-ups) were applicable only to line-ups conducted after the announcement of *Wade* and *Gilbert.*

Instead of applying any of these rules *Johnson* adopted the middle ground, which permitted a prosecutor not to introduce confessions that had been procured in violation of *Miranda* rules, but at the same time did not disturb completed trials. It seems apparent that the Supreme Court did not adopt the *Stovall* rule because it regarded improper confessions as more serious than improper line-ups; and it did not adopt the *Gideon* rule because it regarded improper confessions less seriously than a trial without counsel.

All of the majority's reasoning for adopting its rule on retrials is equally applicable to subsequent trials pursuant to indictments filed before June 13, 1966; yet, they do not go so far. I quite agree that they should not go so far because such a holding would be contrary to the express language of *Johnson.* I think that it is equally clear that *Miranda* applies to a retrial as well as an original trial after the magic date. The majority of the members of this court reject the views of the majority of the courts [1] by stating, in curious language, that these cases

---

1. See cases collected in the majority opinion.

38

"contain little, if any, discussion of the problem and we do not find them persuasive." The majority of the courts are merely carrying out the directions laid down in *Johnson;* therefore, they feel that little discussion is necessary. Those applying the contrary doctrine do discuss it at length because they are trying to avoid the obvious.

If the majority could give, or if I could think of, one reason why *Miranda* should not apply to retrials which is not equally applicable to a trial under an indictment filed prior to June 13, 1966, I would agree with them. Since there is no such reason, I must dissent.