ROBERT LEE JOHNSON *v.* STATE OF MARYLAND

[No. 118, Initial Term, 1967.]

236

238

*Decided October 20, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and PRETTYMAN, J., Associate Judge of the First Judicial Circuit, specially assigned.

*William Carruth* for appellant.

*S. Leonard Rottman, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Donaldson C. Cole, Jr., State's Attorney for Cecil County,* on the brief, for appellee.

PER CURIAM (PRETTYMAN, J., dissents in part).

On January 18, 1966, after a favorable ruling by the Court upon his motion for severance, Robert Lee Johnson was found guilty by a jury on all counts of a five-count Indictment. The First Count charged the Appellant, together with a certain Robert Leo Webster, Robert Marion Owens and Ellsworth Leroy Stewart, with assault with intent to rape a certain Maureen Ruby Dye on September 8, 1965; the Second Count charged the Appellant, together with said named co-defendants, with assault and battery upon the said Maureen Ruby Dye on the same date; the Third Count charged the Appellant with assault, together with the said named co-defendants, upon one

Barabara Bernadine Cordell, on the said date; the Fourth Count charged the Appellant, together with the said named co-defendants, with assault and battery upon one Lamont Neil Bolden on the same date; and the Fifth Count charged the Appellant, together with the said named co-defendants, with assault and battery upon one Willis David Moore, on the said date. On April 22, 1966, the Court sentenced the Appellant to be confined in the Maryland Penitentiary for a period of twenty years, dating from September 14, 1965, upon the First Count, for a period of twenty years, again dating from September 14, 1965, upon the Second Count of the said Indictment, the said sentence to be concurrent with that imposed upon the First Count, a term of five years upon the Third Count of the said Indictment, the said sentence to be consecutive to the sentence imposed under the First Count of the Indictment, a term of five years under the Fourth Count of the said Indictment, the said sentence to be consecutive to the sentence imposed under the First Count of the Indictment, and a term of five years under the Fifth Count of the said Indictment, the sentence to be consecutive to sentence imposed under the First Count of the said Indictment.

On September 8, 1965, after other recreational pursuits earlier in the evening, Willis David Moore, a sailor, and Maureen Ruby Dye, his date, an eighteen year old wave stationed at Bainbridge Naval Training Center, Lamont Neil Bolden, a sailor, and his date, Barbara Bernadine Cordell, a nineteen year old wave also from Bainbridge Naval Training Center, were parked in Moore's automobile in a secluded wooded area near a water tower in the vicinity of a sub-division known as Manor Heights in Cecil County, Maryland, and apparently not too far from Gate 18 of the Bainbridge Naval Training Center. Moore was the driver of the automobile and was seated on the driver's side of the front seat, with Miss Dye next to him. On the rear seat Bolden was situate behind Miss Dye with Miss Cordell next to him seated somewhat in the middle of the rear seat. The car was a two-door automobile. The group arrived at this location at about 10:00 p.m. and remained in the car listening to the radio and drinking beer which they had earlier purchased. At about the same time in the neighboring community of Port Deposit, the appellant, together with the named three co-de-

fendants, and a young man by the name of Thomas William Harris were making plans to go to a lovers lane area in Cecil County to see if they could find any girls whom they would then force to engage in sexual intercourse. Pursuant to this plan they eventually reached the Manor Heights area where the Moore car was parked, and removing their shirts, so as not to be easily seen in the dark and in the brush, they approached the vehicle. Hearing the radio playing and beer tops "popping," they decided to wait longer—in the belief that the occupants would become drunk. They then left the area, rode around in the general vicinity, taking one young man, a certain Thomas Carey, to a point near his place of employment, purchased a half of a pint of whiskey, even though they had previously purchased a half of a gallon of wine, and subsequently returned to the Manor Heights area at about 11:30 p.m. Again, they parked their automobile, driven by Owens, some distance from the Moore automobile, removed their shirts, in order to make their presence less easily discernible, and started down a path toward the Moore automobile. When they reached a fork in the path two of the young men went along one path and two went along another path, according to a pre-arranged plan whereby two were to engage one of the male occupants on one side of the parked car and two were to engage the other of the male occupants on the other side of the parked car, overpower them, and then "use the girls." At this juncture, the fifth man, Harris, stopped and apparently reconsidering the situation, and his intended conduct, he returned to the Owens' vehicle where he remained until Owens later returned to the car. Moore and Bolden, unaware of the presence of the four men near their automobile, got out on opposite sides of Moore's car in order to "relieve themselves." One of the defendants was crouched behind the car and sprang at Moore when he approached; they wrestled; Moore pushed his assailant away, and ran down the road for help. Bolden was assaulted by two men; he feigned unconsciousness to prevent further injury; returned to Moore's car to find only Miss Cordell still on the rear seat. As he drove away with Miss Cordell in search of help, he saw the lights from an approaching car, which he did not then know contained Moore and four other sailors coming to assist. Accordingly, he continued on to Gate 18 in order to obtain assistance.

While Moore and Bolden were out of the vehicle, and apparently after their encounters with their respective assailants, three men approached the passenger side of the front seat of the Moore automobile, opened the front door and bodily took Miss Dye from the automobile. One of the men held her while her clothes were stripped from her from the waist down. She was then taken toward the woods where she was seen by Miss Cordell to be lying upon the ground with one man near her head and two near the lower part of her body. Miss Dye testified that she had been stunned by a blow on the head, but knew that one man held her legs apart while another attempted sexual intercourse after he had put his hand into her vagina. As this car containing Moore approached the scene, Miss Dye ran from the woods screaming that she had been raped. She was naked from the waist down; after she was given a shirt to put around her, she was taken to the Bainbridge Hospital, examined and given a sedative.

Prior to Bolden's returning to the Moore car to drive it away, Miss Cordell had seen a man other than the three who had attacked Miss Dye, come to the right side of the Moore automobile and look in the car. At about that same time, another car came up the road in such a way that its lights illuminated the face of the man, whom Miss Cordell positively identified as the appellant Johnson.

On September 14, 1965, at around 5:30 in the evening, the appellant appeared at the North East State Police Barracks, where he gave a statement to members of the Maryland State Police admitting his complicity in the crime, and denying that he assisted in any way in removing Miss Dye from the car or participating in any way in the attempt to have sexual intercourse with her.

Appellant contends that the evidence was insufficient to support the convictions. We do not agree. To overturn a judgment entered on the verdict of a jury for insufficiency of the evidence, it is necessary to show that there was no legally sufficient evidence, or inferences drawable therefrom, from which the jury could find the accused guilty beyond a reasonable doubt. *Royal v. State,* 236 Md. 443; *Culver v. State,* 1 Md. App. 406. In every criminal case—whether tried before a jury or by

the court sitting without a jury—evidence, to meet the test of legal sufficiency, must show directly, or support a rational inference of, the facts required to be proved; and the facts must be established, or the inferences supported, beyond a reasonable doubt, or to a moral certainty or a reasonable doubt of an opposite fact must be created. *Vincent v. State,* 220 Md. 232; *Spencer v. State,* 1 Md. App. 264. While we do not inquire into and measure the weight of the evidence to ascertain whether the State has proved its case beyond a reasonable doubt, we are required to determine the legal sufficiency of the evidence to take a particular issue, or the entire case, to the jury where, as here, the point has been properly preserved by motion for judgment of acquittal. See *Quinn v. State,* 1 Md. App. 373. We think there was legally sufficient evidence for the jury to find appellant guilty beyond a reasonable doubt. He was positively identified as being at the scene by Miss Cordell. He admitted his participation in the planned attack and admitted his presence during the attack on Miss Dye. The witness Harris placed appellant at the scene of the assaults. Whether appellant was identified as a person who struck any of the victims is not the pertinent inquiry; it is whether the offenses charged were committed by a joint effort of all the defendants, thereby making each a principal. As indicated, we believe there was legally sufficient evidence to hold appellant criminally responsible as a principal for his participation in the crimes, as charged in the indictment.

The appellant next presents the question in the following form: "Whether or not the testimony is uncorroborated is sufficient to convict even though the victims were unable to identify the accused?" While the question is unintelligible, we will consider it in its most favorable light to the appellant by presuming that it applies in two segments. Assuming that the appellant intends to raise the question of the confession, and the fact that it might be uncorroborated, the record indicates that the statement was corroborated by the witness Harris, by the witness Carey, and by Miss Cordell, both as to her positive identification of the appellant, and with her description of the position of the assailants of Miss Dye, which coincides with the position of the assailants as detailed by the appellant in his

statement. If the question is directed to the possible uncorroborated testimony of the witness Harris, again the point is not well taken. The positive identification of the appellant by Miss Cordell would be sufficient corroboration, notwithstanding the appellant's own admissions. Not much in the way of corroboration of the testimony of an accomplice is required. It is not necessary that the corroborating testimony be of itself sufficient to convict the accused, but only that it support some of the material points of the accomplice's testimony. See *Boggs v. State,* 228 Md. 168.

The appellant next poses the question: "Whether or not the sentence was excessive?" It is well settled that any sentence within limits prescribed by law is valid and would not constitute cruel and unusual punishment in violation of constitutional protections, *Charles v. State,* 1 Md. App. 222, unless dictated by passion, prejudice, ill-will, or any other unworthy motive. *Logan v. State,* 1 Md. App. 213. It is not suggested that the sentence was dictated by any unworthy motive and it is clear that the sentence imposed upon the count of the indictment charging assault with intent to rape did not exceed the maximum penalty provided by statute for that offense under the verdict returned by the jury. And as there are no punishment limits prescribed by statute for the common law offenses here involved, *viz.,* assault and assault and battery, the only limitation on such punishment is that it not be cruel and unusual in the constitutional sense. As to the sentences imposed on these common law counts, we do not feel that they are offensive to constitutional standards in any way, and since the assault on Cordell, and the assaults and batteries upon Bolden and Moore were separate offenses against different victims, no question concerning the merger of these counts with other counts of the indictment is involved.

The question of merger is, however, clearly involved in connection with appellant's convictions for assault and battery of Miss Dye and with assault with intent to rape Miss Dye. Appellant contends that since all of the events "took place in the same transaction," the doctrine of merger must be applied. The applicable legal principles are by no means so easily articulated. The question of merger of offenses is one of exceeding com-

plexity, as evidenced by the governing principles recited in *Veney v. State,* 227 Md. 608, and recently applied in *Green v. State,* 243 Md. 75, and *Chittum v. State,* 1 Md. App. 205. We need not consider these principles in detail here since we deem *Marks v. State,* 230 Md. 108, to compel the conclusion that the assault and battery count merged into the greater offense of assault with intent to rape. In *Marks,* the appellant had applied a lighted cigarette to the clothing of his son, which subsequently burst into flames and severely burned the child. Appellant was there convicted of assault with intent to maim and assault and battery. The court held at page 112 that the assault and battery count "being a lesser crime included in assault with intent to maim, etc., merged with the greater offense." Under the circumstances of the present case, and on authority of *Marks,* we hold that the assault and battery conviction merged into the assault with intent to rape and, therefore, we must vacate the verdict and concurrent twenty year sentence on the second count charging assault and battery of Miss Dye.

The appellant's brief further contained several contentions, the disposition of which can most easily be made with the statement that they are totally unsupported by any evidence in the record, or any inference, reasonable or otherwise, that might be drawn therefrom, with no such objections having been raised below or preserved for consideration upon appeal. References to the Ku Klux Klan, the flaring of tempers, the identification of the appellant and his companions by race, the suppression of evidence and the "secreting" of witnesses all fall into that category. As to other inferences in the brief, suffice it to say that *Miranda v. Arizona,* 384 U. S. 436, does not apply because it is not retroactive. The trial court did not have to believe the appellant, particularly in view of the contradictory evidence of the officers who took the statement, with regard to the request for counsel, so *Escobedo v. Illinois,* 378 U. S. 478, does not necessarily apply. The court has been referred to no authority, and it doubts the existence of any, that would support the contention (if a contention, in fact, it is of the appellant) to the effect that knowledge of the existence of a statement of an accomplice implicating the defendant constitutes in and of itself such force, coercion or duress, psychological or otherwise, as to

deny the admissibility of the statement of the accused on the grounds that it was not made freely and voluntarily, and at such a time when the appellant knew and understood what he was saying. See *Koprivich v. State,* 1 Md. App. 147, at page 151. We find the statement of the appellant to have met the tests of admissibility as hereinbefore set forth.

Judge Prettyman dissents from that portion of this Opinion which applies the doctrine of merger to the charge of assault and battery with that of assault with intent to rape.

> *Judgment as to counts 1, 3, 4 and 5 affirmed. Judgment as to count 2 vacated.*