## MILTON RUDOLPH HONEST *v.* STATE OF MARYLAND

[No. 8, September Term, 1968.]

*Decided December 3, 1968.*

The cause was submitted to MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Robert V. Lazzaro,* with *G. Denmead LeViness* on the brief, for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *William J. Blondell, Jr., Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

Morton, J., delivered the opinion of the Court.

The appellant, Milton Rudolph Honest, was found guilty by a jury in the Circuit Court for Baltimore County on an indictment charging robbery with a deadly weapon, and on two separate indictments, each charging assault with intent to murder. He was sentenced to respective prison terms of 12 years, 5 years (consecutive) and 5 years (concurrent).

The record indicates that at 3:00 A.M. on May 22, 1967, the night auditor of a Holiday Inn was sitting alone in the lobby when accosted from behind by two men who ordered him, at gunpoint, to open the safe and then lie on the floor. After taking $425 from the safe and some money from the victim's wallet, the men left the premises. The auditor called the police, gave a general description of the men, but was unable to identify Honest as being one of the robbers.

The desk clerk of the Inn testified that as he was leaving the building to direct a guest to a nearby restaurant, he observed the two men going into the building through the back door. He returned to the building, looked in and, when he could not see the auditor, suspected something was wrong. He related his suspicions to a police officer who was sitting in a cruise car across the street; got in the back seat of the police car and was driven over to the front of the motel, where he observed through the front window one of the men reaching under the counter, getting the cash box, and further testified that the two men "stared at us and we stared at them." The men then ran out the back door. The officer immediately drove the car around to the rear of the motel where the two men were observed beside a car. According to the desk clerk, as the officer began to notify his dispatcher over the car radio of this encounter, one of the men, wearing sun glasses, started running toward the police car whereupon the clerk got on the rear floor of the car,

heard three shots and the window of the police car shatter. He could not positively identify Honest at a lineup, "but I told them the one on the end [Honest] looks more like the one than the others." He did identify Honest in the courtroom as the one who fired the shots at the patrol car.

The driver of the police car testified substantially in accordance with the clerk's testimony. He also made an in court identification of Honest as the individual who fired at him in the police car, having previously identified him in a police lineup.

Another officer, Edward Amoss, testified that he stopped a car that he observed leaving the Holiday Inn parking lot at approximately 3:10 A.M.; that neither of the two occupants was Honest; but upon searching the car he and another officer found a bowling shoe bag with a yellow tag attached to it with the name Duke written thereon and the bag contained an empty revolver holster and a bill of sale for a 1957 Cadillac made out to Honest.

An arrest warrant was issued two days after the crimes and a Sergeant Joseph Gomeriger and a Detective Sutter went to a residence where the appellant roomed to serve it. Receiving no answer at the appellant's room, they spoke with a Mrs. Martin, the mother of the landlady, who recognized the appellant by the nickname Duke. The landlady then arrived and granted them permission to enter the appellant's room. They searched under the bed and in the closet without finding the appellant. Upon opening the closet door one of the officers observed a revolver "on the closet shelf * * * sticking out from between two blankets" and called the other officer's attention to the weapon. At this point the search was discontinued and one of the officer's left to obtain a search warrant while the other remained at the rooming house. Both officers testified that the sole purpose in entering the room was to apprehend Honest and not to search his room unless he were there. Recovered from the room were the 38 caliber revolver observed by the officers with four spent cartridges and two live rounds in its chamber, and numerous papers indicating that Honest lived there.

The revolver was offered in evidence and it was stipulated that the three bullets removed from the police officer's car were examined by the Federal Bureau of Investigation and that the

bullets were probably from the revolver subsequently seized in Honest's room but that it was possible that they could have been fired from another revolver.

Honest testified in his own behalf and denied any participation in the robbery or assaults and also denied that he left his revolver in plain view of the officers who searched his room. He admitted prior convictions for larceny, assault and illegal possession of narcotics.

The appellant first contends that the pre-trial lineup "was rigged against him." He asserts that he was positioned on the end of the line and that the other three individuals in the line-up were "apparently uniformed personnel of the police station and that they were all three of the same height and all were shorter than him." A careful examination of the record reveals that this assertion is utterly unsupported by the testimony. The only testimony concerning the lineup identification was adduced by defense counsel in his cross-examination of the two witnesses who identified Honest. There is no suggestion in their testimony to support the appellant's allegations and, accordingly, we find his contention to be without merit. *Johnson v. State,* 2 Md. App. 235, 244.

He next contends that the "search and seizure warrant obtained by the police after entering his room with an arrest warrant was illegally and unconstitutionally obtained." The two police officers who attempted to serve the arrest warrant testified that they searched the appellant's room solely for the purpose of locating him. In the course of their search they opened the closet door and observed the revolver in plain view. Thereafter, one of the officers left to obtain a search and seizure warrant while the other officer remained on the premises. Upon the officer's return with the search and seizure warrant they took possession of the revolver and proceeded to search for other evidence. There is no merit in the appellant's contention "that the police exceeded their authority when they probed around in his closet uncovering the gun." Armed with the arrest warrant the officers had not only a right but a duty to take all steps necessary to ascertain whether the appellant was in the room. When, in the course of their lawful search for the appellant, they discovered a revolver, they sought and obtained a search and sei-

zure warrant. Under the circumstances, they followed the procedure commended by the United States Circuit Court of Appeals for the Fourth Circuit in *Hall v. Warden,* 313 F. 2d 483 and approved by the Court of Appeals of Maryland in *Gross v. State,* 235 Md. 429, 442. Thus, the appellant's contention is without merit.

The appellant finally contends that the evidence was too conflicting and inconclusive to justify his conviction. The identification by two eye witnesses to the crime was, in itself, sufficient evidence upon which the jury could base its verdict of guilty. *Coates v. State,* 232 Md. 72; *Gibson v. State,* 4 Md. App. 222; *Crumb v. State,* 1 Md. App. 98. Moreover, the discovery of appellant's revolver with four expended cartridges, the discovery of his bowling bag in a car near the scene of the crime and the Federal Bureau of Investigation report afford additional supporting evidence from which the jury could find the appellant guilty beyond a reasonable doubt.

*Judgments affirmed.*