# LAWRENCE H. LEE *v.* STATE OF MARYLAND

[No. 877, September Term, 1972.]

*Decided August 17, 1973.*

The cause was argued before MOYLAN, POWERS and CARTER, JJ.

*Frank Sacks* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom

were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Joseph S. Lyons, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

CARTER, J., delivered the opinion of the Court.

The appellant, Lawrence H. Lee, was convicted in the Criminal Court of Baltimore by Judge Harry A. Cole, sitting non-jury, of the crime of incest and sentenced to ten years in prison. He contends that the evidence was legally insufficient to justify his conviction.

The victim, Rita Lee, testified that when she was nine years of age her father approached her and "asked me for my body." She submitted to his request because she was afraid if she did not do so he would hurt her. Thereafter her father continued to have sexual relations with her on an average of three times a week over a period of the next ten years or until she was nineteen years of age. Even though this relationship was contrary to her wishes, she did not tell anyone about it because her father had told her if she did so, he would kill her and she was afraid of him.

The intercourse usually occurred late at night when her father would come to her bedroom and take her downstairs. On these occasions the remainder of the family, consisting of her mother and several brothers and sisters, would be asleep on the second floor of the home.

As a result of this relationship, the daughter gave birth to two children. The first one was born when she was fourteen years of age and the second when she was fifteen. Her father told her not to tell anyone that he was the father of her children. Consequently, she designated the children's father as unknown in their birth certificates. Eventually, at her father's suggestion, she gave the fictitious name of William Scott as the father of her first child.

The evidence showed that none of the other members of the family knew about the relationship until April 1972. At that time Steven Lee, an eighteen year old brother of Rita, came home one night about 2 a.m. and saw his father and Rita sleeping together on a cot in the kitchen.

During the early part of 1972, Rita and her father argued because he had forbade her to go with her boyfriend, Reggie Wilson, who wanted to marry her. The father based his disapproval of Reggie on the ground that he associated with bad company. On May 11, 1972, Rita went to a policewoman at the Northwestern Police Station and reported her relationship with her father. She was advised to secure a warrant charging him with incest. She did so and he was arrested on May 12, 1972. She testified that the reason she reported the relationship was "[b]ecause I was being used all of these years and it was wrong."

The policewoman testified that after Rita made the report and after warnings were given to the appellant of his constitutional rights, she interviewed him. At that time he denied having had sexual relations with his daughter but did say he had told her she had a beautiful body. When he was asked if he stressed the fact with Rita that she had a beautiful body, he replied, "[W]ell, like any man, when you see a beautiful woman." At that point he hesitated and did not say anything more.

The appellant testified and denied having had any sexual relations with his daughter. He stated that the reason Rita had preferred charges against him was because she was angry with him for not consenting to her marrying Reggie. He denied suggesting the name of William Scott as the father of her child and denied the statements attributed to him by the policewoman concerning Rita's body. He explained his presence on the cot with Rita by saying that on that evening he had gone downstairs to get cool. After he did so, Rita came down and got in bed with him. He had no explanation, however, as to why he did not require Rita to sleep on the couch in the living room if she likewise came downstairs to get cool.

## SUFFICIENCY OF THE EVIDENCE

Md. Code, Art. 27, § 335 provides in pertinent part:

"Every person who shall knowingly have carnal knowledge of another person, being within the

degrees of consanguinity within which marriages are prohibited by law in this State, shall be guilty of felony, * * *."

Art. 62, §§ 1 and 2 prohibits the marriage of a man and his daughter.

The appellant contends that the State's evidence is legally insufficient to permit a finding that his daughter was a *victim* in the alleged incestuous relationship rather than an *accomplice* and that the court was clearly in error in finding her to be such. He further asserts that since she was an accomplice according to the State's evidence and there was no adequate corroboration of her testimony, his conviction was not justified even if all of the State's evidence was believed.

In response to these contentions the State asserts that in Maryland a prosecuting witness in an incest case is not to be regarded as an accomplice. *Scott v. State,* 2 Md. App. 709, 237 A. 2d 267, and *Leek v. State,* 229 Md. 526, 184 A. 2d 808 are cited as authorities for this assertion. We think the reliance is misplaced. In *Scott, supra* at 714, we said:

"* * * The prosecuting witness in a rape case is not an accomplice, nor do we feel that such witness is an accomplice in an incest or carnal knowledge case. Therefore her testimony need not be corroborated. * * *"

In *Scott,* however, there was no evidence tending to establish that the daughter voluntarily had sexual relations with her father. On the contrary, the father's attempt to have intercourse provoked physical violence between him and the daughter, resulting in his conviction of assault and battery. We think therefore that the statement of this Court referred to in *Scott* related to the facts of that case only and must be read in the context of those facts. In other words, under the evidence in that case, the daughter could not possibly be considered an accomplice as a matter of law. As hereinafter pointed out, in order to be an accomplice, a witness must be a voluntary participant in the crime.

In *Leek, supra* the Court of Appeals simply applied the

uniformly recognized rule that by the very nature of the offense a prosecuting witness in a rape case cannot be considered an accomplice. If she voluntarily participated in the intercourse, there would, of course, be no rape.

This Court, speaking through Chief Judge Orth, clearly defined an accomplice and stated the rule requiring corroboration of the testimony of such a witness in *Burley v. State,* 5 Md. App. 469, 248 A. 2d 404. At 472, we said:

> "An accomplice is one who knowingly, voluntarily, and with common criminal intent with the principal offender, unites with him in the commission of the crime either as a principal or as an accessory before the fact. *Watson v. State,* 208 Md. 210. An accomplice is a competent witness; * * * But '(i)t is a firmly established rule in this State that a person accused of crime may not be convicted on the uncorroborated testimony of an accomplice.' *Watson v. State, supra,* at 217. There must be corroborative evidence supporting the testimony of the accomplice as to some of the material facts, tending to show that the accused was either identified with the perpetrator of the crime or had participated in the commission of the crime itself. *Boone v. State,* 3 Md. App. 11, 19-20. * * * The generally accepted test as to whether a · witness is an accomplice is whether he himself could have been convicted for the offense, * * *."

See also *Foster v. State,* 11 Md. App. 40, 46, 272 A. 2d 810.

The Court of Appeals in *Lusby v. State,* 217 Md. 191, 141 A. 2d 893 distinguished the situations wherein a participant in an incestuous relationship would be deemed an accomplice from those in which she would be considered a victim. The facts in *Lusby* were similar to those in the case before us. In *Lusby,* a father was charged with committing incest with his seventeen year old daughter. The daughter testified that the relationship had continued for four years during which time her father had intercourse with her several times a week. In that case, as here, all acts of

intercourse took place in the father's home. During this period a brother and a sister were also living in the home. In *Lusby*, the Court held that the evidence was legally sufficient to justify the jury in finding that the daughter was a victim and not an accomplice. In so holding, the Court, speaking through Judge Horney, said at 199-201:

"Whether a participant in an incestuous relationship is an accomplice or a victim must depend upon the facts in each case. Obviously, the relationship will not submit to a rigid rule. 7 *Wigmore, Evidence* (3d ed. 1940), Sec. 2060(b), footnote 7. That the status of a participant is entirely a factual one is demonstrated by those cases which hold that the woman will be an accomplice where she *freely and willingly consents* to the sexual union. * * *

"Where, however, a passive participant in an incestuous relationship *does not freely consent* to copulation, and where the sexual union is achieved by force, threats or undue influence on the part of the aggressive participant, the passive participant is not an accomplice, but a victim. * * * *Schwartz v. State*, 65 Neb. 196, 91 N. W. 190 (1902), (not accomplice although relationship continued over two years); *Whittaker v. Commonwealth*, 95 Ky. 632, 27 S. W. 83 (1894), (victim, not accomplice, even though relationship long continued). * * *

* * *

"As Judge Collins pointed out in *Gregoire v. State*, 211 Md. 514, 128 A. 2d 243 (1957), there is a distinction between mere submission and actual consent. At p. 520 he said:

'Consent, in law, means a voluntary agreement * * * to do something proposed by another. 'Consent' differs very materially from 'assent'. The former implies some positive action and always involves submission. The

latter means mere passivity or submission, which does not include consent.'

"In the present case there was sufficient evidence from which the jury could find that, although the daughter had assented to the sexual union with her father, she had not consented to it. There was evidence that the incestuous relationship was odious to her. She was afraid of her father. But her dependence on him compelled her to remain under his roof and continue the unholy relationship whenever he demanded. The jury could also have found that the participation of the daughter was *not voluntary.* * * *"

See also Annotation titled "Prosecutrix in incest case as accomplice or victim", 74 A.L.R.2d 705-727 and cases cited.

Applying the rationale in *Burley v. State, supra* and *Lusby v. State, supra* to the State's evidence, as heretofore related, we conclude that it was legally sufficient to justify the trial court in finding that the daughter was a victim of the incestuous relationship and not an accomplice. The record shows that the trial judge so found. After arriving at such a finding, the court was legally justified in convicting the appellant on her testimony alone, if he believed her. See *Sutton v. State*, 4 Md. App. 70, 72, 241 A. 2d 145; *Tillery v. State*, 3 Md. App. 142, 148, 238 A. 2d 125.

Assuming *arguendo* that the evidence was not legally sufficient to establish that the daughter was a victim rather than an accomplice, we conclude nevertheless that the testimony of her brother Steven was sufficient corroboration of her testimony to justify the appellant's conviction in any event. In *Kitt v. State*, 2 Md. App. 306, 310-311, 234 A. 2d 621, we said:

"* * * It is not necessary for the corroborative evidence to be sufficient in itself to convict; it need only support some of the material points of the accomplice's testimony * * * tending to show the guilt of the accused, * * *."

See also *Barton v. State*, 2 Md. App. 52, 56, 233 A. 2d 330; *Johnson v. State*, 2 Md. App. 235, 243, 234 A. 2d 167.

For the above reasons, we hold that the trial judge was not clearly in error in finding the appellant guilty of the crime of incest.

*Judgment affirmed.*