ALFRED MARK FARMER *v.* STATE OF MARYLAND

[No. 90, September Term, 1968.]

*Decided December 18, 1968.*

548

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Mark A. Singerman* (*Norman N. Yankellow* on brief) for appellant.

*Dickee M. Howard, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Thomas A. Rymer, State's Attorney for Calvert County,* on the brief, for appellee.

PER CURIAM.

Alfred Mark Farmer, the appellant, complains of a conviction for attempted armed robbery in the Circuit Court for Calvert County before Judge Perry G. Bowen, Jr. sitting without a jury. He was sentenced to a term of fifteen years.

There was evidence from which the trial court could have found the following:

About 6:30 p.m., January 4, 1968 Edward George Acton entered a grocery store on Ponds Wood Road and pointed a shotgun, which had tape around it, at Louise Bowen, co-owner of the store. She started to struggle with Acton and called to her husband, Raymond Bowen, who left their living quarters behind the store and entered the store. He disarmed the would be hold up man, at which point a second man (later identified as Paul Edward Lanham) entered the store wearing a stocking over his head and also armed with a shotgun and said "Hold it." Mr. and Mrs. Bowen put their hands up and a few seconds later Keith Bowen, who is the twelve year old son of the Bowens, entered the store with a shotgun. When Bowen told his son to "shoot," Keith and Lanham fired simultaneously. Lanham then went out of the store, and Acton retrieved his rifle and struck Keith on the head. Bowen again disarmed Acton and Mrs. Bowen called the police. When the police arrived Bowen was holding Acton prisoner and Lanham had escaped. Keith Bowen testified that he fired his gun twice; once when Lanham entered the store and a second time when Lanham re-entered the store. Lanham received two wounds—one in the leg and another in the arm.

Trooper Jackie L. Cawthorne received information that someone had requested an ambulance at the Fire House. He proceeded to the Fire House and one Richard Lanham was pointed out to him as the person who had requested the ambulance. Richard Lanham took Trooper Cawthorne to the home of Thomas Jackson where he found Paul Edward Lanham, who was suffering from apparent gunshot wounds. Trooper Cawthorne testified that the appellant, Alfred Mark Farmer, was present in the Jackson home.

Trooper Ireland testified that when he arrived at the Jackson home Farmer said that he had been in the company of Acton and Lanham that afternoon. Farmer stated that he, Lanham and Acton, had left the Jackson home for the purpose of selling his shotgun which he then produced. The gun was taped. In a subsequent written statement Farmer said that when Lanham returned to the car, after having gone into the grocery store, Lanham stated that "I have been shot to pieces."

Thomas Jackson testified that Farmer had been staying at his home for approximately five days prior to January 4, 1968 and that Farmer was at home all day. He further testified that on the evening of January 4, 1968 Farmer left the house to go to the store and when he returned Edward George Acton was with him. Acton then asked if he could borrow the Jackson car "to run up the road to see if he could borrow some money." Jackson consented to lending Acton the car and Farmer agreed to drive because Acton had no license. Approximately fifteen minutes later Farmer returned for his shotgun, saying that Acton knew where he could sell it for twenty dollars. When Farmer returned to the Jackson home, approximately an hour and a half later, he was accompanied by Paul Edward Lanham, who had suffered gunshot wounds. Farmer brought his shotgun back into the house and took it upstairs.

A search of the front of Jackson's car revealed a paper bag and a pair of nylon stockings. Three nylon stockings were found in the glove compartment. On the seat of the left rear of the automobile was a "large pool of blood," and a coffee can containing eight shotgun shells was found on the floor.

Both Edward George Acton and Paul Edward Lanham plead guilty to attempted armed robbery and both were called as wit-

nesses for Farmer and confirmed that Farmer had driven the Jackson car to the grocery store but both denied discussing the robbery with Farmer. The trial court sustained objections by the witnesses' counsel, to some of the questions Farmer asked Acton. Farmer did not testify.

Farmer first contends that the trial court committed error in refusing to grant a continuance when at the trial he objected to the testimony of two of the State's witnesses whose names did not appear on the back of the indictment, and moved that the case be continued because of the absence of the witnesses' names on the indictment. The contention is without merit.

Maryland Rule 717 provides as follows:

"When an indictment is filed, the names of the witnesses on whose evidence it was based shall be endorsed thereon. Failure so to endorse the names shall not affect the validity or sufficiency of the indictment, or the admissibility of other evidence, but the court, on motion of the defendant, shall direct the names to be so endorsed, or otherwise furnished to the defendant, and may grant such continuance or postponement of the case as justice may require."

Since the indictment showed the names of all other witnesses as having testified before the Grand Jury, and since there is nothing in the record to indicate that the two witnesses involved did in fact testify before the Grand Jury we cannot say that the trial judge was in error when he refused the continuance. Under the rule itself there is no basis for objecting to the admissibility of the testimony.

Farmer alleges error in that the court sustained objections by counsel for one of the co-defendants, Acton, to certain questions propounded by Farmer's counsel on the basis that his answers would tend to incriminate the witness in view of other indictments involved in the above transactions, including one for assault with intent to murder.[1] The basis for the conten-

---

1. The record indicates that this charge had been stetted but this would not necessarily bar a subsequent trial on this charge. *Brown v. State,* 2 Md. App. 388, 234 A. 2d 788. See discussion in *Martel v. State,* 221 Md. 294, 157 A. 2d 437.

tion is that the privilege [2] is personal and must be claimed [3] by the witness personally [4] under oath.[5] Although the witness himself has to personally assert the privilege, the cases show this may be done by his actions in not answering the questions even though he himself did not raise the point of privilege.[6] The witness here adopted the objection of his own counsel by not giving answers to questions to which the trial court sustained objections. Although this point in this precise form seems not to

2. For a brief history of the privilege see *Chesapeake Club v. State,* 63 Md. 446, 455-58 (1885), *Blum v. State,* 94 Md. 375, 379-85, 51 A. 26, 28-30 (1902) and also see *Boone v. State,* 3 Md. App. 11, 237 A. 2d 787, 790-92 (1968).

3. The procedure for claiming the privilege has been set out in *Midgett v. State,* 223 Md. 282, 164 A. 2d 526, 529-31 (1960) *cert. denied* 365 U. S. 853, 81 S. Ct. 819, 5 L.Ed.2d 817, *Royal v. State,* 236 Md. 443, 204 A. 2d 500, 502-503 (1964) and *Shifflett v. State,* 245 Md. 169, 225 A. 2d 440, 442-43 (1967).

4. The Court of Appeals of Maryland has repeatedly held that "It is the privilege of the witness not of the party", *Roddy v. Finnegan,* 43 Md. 490, 502 (1876). Also see *Chesapeake Club v. State, supra, Raymond v. State, ex rel Younkins,* 195 Md. 126, 72 A. 2d 711, 713 (1950), *Adams v. State,* 200 Md. 133, 88 A. 2d 556, 561 (1952), *Butz v. State,* 221 Md. 68, 156 A. 2d 423, 426-27 (1959), *Midgett v. State, supra, Forrester v. State,* 224 Md. 337, 167 A. 2d 878, 881 (1961), *Franklin v. State,* 239 Md. 645, 212 A. 2d 279, 281-82 (1965), *Boone v. State, supra.* Also see *Richardson v. State,* 103 Md. 112, 63 A. 317 (1906) where the Court allowed the witness to testify over the objection of the defendant; the privilege itself was not discussed. In *Chesapeake Club v. State, supra,* the Court allowed the defendant to raise the issue on appeal that the witness' assertion of the privilege should have been sustained. However, this point was reversed by *Butz v. State, supra;* see *Midgett v. State, supra.*

5. In *Royal v. State, supra,* the Court stated that a witness should be sworn "because the privilege is not a prohibition of inquiry, but is an option of refusal." Also see *Chesapeake Club v. State, supra, Blum v. State, supra, Raymond v. State ex rel Younkins, supra, Adams v. State, supra, Midgett v. State, supra* and *Shifflett v. State, supra.*

6. For a discussion as to whether the court may inform a witness of the privilege see *Stevens v. State,* 232 Md. 33, 192 A. 2d 73, 77 (1963) *cert. denied* 375 U. S. 886, 84 S. Ct. 160, 11 L.Ed.2d 115, *Royal v. State, supra, Fowler v. State,* 237 Md. 508, 206 A. 2d 802, 806 (1965), *Kitt v. State,* 2 Md. App. 306, 234 A. 2d 621, 625 (1967). Also see *Gaylord v. State,* 2 Md. App. 571, 235 A. 2d 783, 786 (1967), *Charles v. State,* 4 Md. App. 110, 112, 241 A. 2d 435 (1968).

have been presented to Maryland courts,[7] heretofore,[8] we think the result here was indicated in *Royal v. State, supra,* 204 A. 2d 503 when the Court stated:

> "In circumstances where the court is satisfied that the claim has a substantial basis, the mere refusal to testify under a claim of privilege may jusify the upholding of the privilege."

There is no doubt that in the present case the claim had a substantial basis. Where this is true there is no need to indulge in nice technicalities.

Wigmore, *Evidence* § 2270 (McNaughton Rev. 1961) has stated the rule as follows:

> "The privilege must be claimed personally; however the courts, especially when the witness is a party or when the situation otherwise demands frequently permit counsel for the witness to call the witness' attention to the privilege or to plead it in his behalf."

We see no error in the trial judge's rulings.[9]

Finally, Farmer contends that the evidence was insufficient

---

7. However, this factual situation has arisen before. In *Vandegrift v. State,* 237 Md. 305, 206 A. 2d 250, 252 (1965) the witness' attorney objected to the questions asked. The issue raised on appeal did not concern the issue here. In *Blum v. State, supra,* the Court allowed counsel to object to the introduction of defendant's books into evidence; however, *dictum* in the case stated that the privilege "cannot be claimed for him by counsel or by a party."

8. The Federal Courts have been presented this issue before, see 4 Orfield, *Criminal Procedure under* the *Federal Rules* § 26:595 at 127-28. For other jurisdictions see 51 ALR 2d 1178, 1179 n.4, 4 Jones, *Evidence* § 859 (5th ed. 1958), 3 Wharton, *Criminal Evidence* § 729 (Anderson Ed. 1955).

9. The trial judge stated that he was sustaining the objections on the basis that the witness might incriminate himself and also on the basis that the witness might commit perjury. While we know of no authority to support the trial judge's rulings with reference to the perjury fear, there was one adequate basis for the rulings and the fact that the other basis may have been inadequate is of no importance.

to support his conviction and that the trial judge's findings were clearly erroneous within the meaning of Maryland Rule 1085.

The trial judge specifically found that Farmer "knew what was being planned with respect to this store, while he was unwilling to take a gun and beard the owner, he was willing to participate to the extent of providing the gun, providing the transportation and maintaining a lookout in a get-away position on the outside of the store." We cannot say that his finding was clearly erroneous on the evidence hereinbefore cited.

The trial judge was not obligated to believe the testimony of the witnesses who stated that Farmer went on the trip intending to sell his gun. In view of the quick get-away when one of the co-defendants was shot and the other co-defendant was held prisoner, it would strain the imagination to believe that Farmer was not a full participant in the proceedings. A person who serves as lookout is as guilty as a person who does the actual robbing. *Butina v. State,* 4 Md. App. 312, 242 A. 2d 819. His presence at the scene of the crime and his flight therefrom are both factors that may be considered in a determination of guilt, see *Williams v. State,* 3 Md. App. 58, 237 A. 2d 822, *Anderson v. State,* 3 Md. App. 362, 239 A. 2d 579, *Shifflett v. State,* 3 Md. App. 550, 240 A. 2d 286 and *Coleman v. State,* 4 Md. App. 386, 243 A. 2d 24.

*Judgment affirmed.*