The appellant, Wayne Daniel, was indicted by a Jefferson County grand jury for the offense of unlawful distribution of a controlled substance, in violation of § 13A-12-211, Code of Alabama 1975. A jury found *Page 440 
the appellant guilty as charged in the indictment. The trial court ordered a presentence investigation and, on March 10, 1992, held a habitual offender hearing. As a result, the trial court sentenced the appellant to 16 years in the penitentiary and enhanced his sentence by 5 years pursuant to § 13A-12-270, Code of Alabama 1975, because the sale of the controlled substance occurred within a 3-mile radius of a public school.
The appellant filed a motion for new trial on March 31, 1992, and a second motion for new trial, or in the alternative a motion for reconsideration of sentence on April 3, 1992. The trial court held a hearing on the appellant's motions on June 18, 1992, and on June 25, 1992, the trial court denied the appellant's motions. The appellant filed a timely notice of appeal on July 7, 1992.
The facts established at trial show the following. On March 17, 1989, Lenzel Brown, Marcus Hood and the appellant met an undercover police officer, Agent Clarke Cosey, who arranged with Brown to purchase one-half ounce of cocaine. The appellant, Brown, and Hood then proceeded to a house where the sale took place. Cosey testified that when he arrived at the house, he saw the appellant, Brown and Hood enter the house and saw the appellant openly carrying a handgun as he walked into the house. Cosey said that he entered the house as well.
Cosey testified that while they were in the house, Brown proceeded to weigh the cocaine on a counter in the kitchen. Cosey spoke with the individuals present during the weighing of the cocaine. Cosey testified that the appellant placed his handgun on the kitchen counter. He said that when he approached the counter, the appellant picked up the gun. Cosey further testified that the appellant told Brown how to weigh the cocaine by placing "seven and seven" on the scales to arrive at one-half ounce.
The appellant acknowledges that the crime occurred and that he openly carried a weapon with him to the scene of the crime. However, the appellant denies that he actually participated in or aided and abetted in the commission of the crime. The appellant testified that he never explained how to weigh one-half ounce of cocaine, that he had no conversations with Cosey, and that he received no money for the cocaine that was sold.
The appellant raises several issues on appeal.
 I
The appellant challenges the sufficiency of the State's evidence to convict him for unlawful distribution of a controlled substance under § 13A-12-211, Code of Alabama 1975, and argues that the trial court erred in denying his motions for new trial. Section 13A-12-211(a) provides that "[a] person commits the crime of unlawful distribution of a controlled substance if, except as otherwise authorized, he sells, furnishes, gives away, manufactures, delivers or distributes a controlled substance enumerated in schedules I through V."
The appellant was charged with the substantive offense based upon his complicity, as pursuant to § 13A-2-23, Code of Alabama 1975, which provides, in relevant part:
 "A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense:
 "(1) He procures, induces or causes such other person to commit the offense; or
 "(2) He aids or abets such other person in committing the offense. . . ."
In determining the sufficiency of the evidence, this Court must accept as true the evidence introduced by the State, must make all legitimate inferences from that evidence and must consider such evidence in the light most favorable to the State. Morgan v. State, 589 So.2d 1315, 1317
(Ala.Crim.App. 1991); Jackson v. State, 516 So.2d 726, 752
(Ala.Crim.App. 1985).
Essentially the appellant argues that he was merely present during the commission of this offense and that he did not possess the intent to promote or to assist the others in its commission. After reviewing the trial testimony, we hold the jury could have found that the appellant was present at the crime to provide security for the transaction from the evidence presented at trial that *Page 441 
the appellant openly carried a gun into the house where the distribution took place and that he placed the gun on the counter during the weighing of the cocaine. The jury could have further found Cosey's testimony that the appellant assisted in weighing the cocaine by giving instructions to Brown more credible than the appellant's testimony that no such statement occurred.
We hold, therefore, that there was sufficient evidence from which the jury could determine that the appellant was guilty of aiding and abetting in the unlawful distribution of a controlled substance.
 II
The appellant next challenges the admission of evidence of his a 1987 conviction in California for the unlawful distribution of a controlled substance. This evidence was admitted at the sentencing hearing for enhancement of the appellant's sentence under the Habitual Offender Act. Specifically, the appellant contends that the trial court erred in failing to require the State to prove that the California conviction had been properly authenticated and that that conviction constitutes a felony in Alabama.
The appellant admitted during the trial that he had been convicted of possession of cocaine. The admission by a defendant of a prior conviction constitutes proper proof to enhance that defendant's sentence under the Habitual Offender Act. Crittenden v. State, 414 So.2d 476, 482
(Ala.Crim.App. 1982); Hope v. State, 381 So.2d 676 (Ala.Crim.App. 1980). Moreover, during the sentencing hearing, the appellant's counsel did not object to the admission of the documents reflecting the appellant's California conviction and the appellant's counsel specifically referred to the evidence of the prior conviction during direct examination of the appellant at the sentencing hearing. We conclude that the trial court did not err in allowing the introduction of the prior felony conviction into evidence. Therefore, the appellant's sentence was properly enhanced under the Habitual Offender Act.
 III
The appellant also argues that the trial court erred in denying his motion made pursuant to Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and that he was denied effective assistance of counsel because of the alleged failure of his counsel to properly argue the Batson motion after the jury was selected. Specifically, the appellant contends that his trial counsel argued the Batson motion on the basis of gender discrimination although the Batson has not been extended to discrimination based upon gender. As well, the appellant contends that his Batson motion should have been granted by the trial court on the basis of racial discrimination.
At the outset, we hold that the appellant's contention that he was denied effective assistance of counsel is not properly before this Court. The Alabama Supreme Court and this Court have held that claims of ineffective assistance of counsel may not be considered for the first time on direct appeal. Ex parteJackson, 598 So.2d 895, 897 (Ala. 1992); Jackson v. State,534 So.2d 689, 692 (Ala.Crim.App. 1988). A claim of ineffective assistance of counsel, to be subject to review on appeal, must be properly and timely raised with the trial court in a motion for new trial. Ex parte Jackson at 897. Although two motions for new trial were made in this cause, a claim of ineffective assistance of counsel was not made in either motion.
While the ineffective assistance of counsel claim has not been properly preserved for our review, the issue as of whether the trial court erred in denying his Batson motion was preserved. The appellant correctly asserts that our courts have not extended Batson, to gender-based strikes. See Ex parteDaniels, 581 So.2d 541 (Ala. 1991), cert. denied, ___ U.S. ___,112 S.Ct. 315, 116 L.Ed.2d 257 (1991). However, a careful review of the record reveals that the appellant's trial counsel did, indeed, initially base the Batson motion upon racial discrimination. During the discussion on the Batson motion, the following occurred:
 "MR. ALVIS [Defense Counsel]: Judge, based on Batson by my calculations the district attorney struck one white male, *Page 442 
three black females, and four white females —.
". . . .
 "MR. ALVIS: Based on that it appeared she used her peremptory strikes to eliminate blacks from the jury and according to Batson is a denial of my client's constitutional rights.
 "THE COURT: Well, I will find the defendant failed to make a prima facie case. Be sure I have the statistics. A gender-based variation of Batson.
 "MR. ALVIS: Yes, sir. If my calculations are correct we had seven strikes.
". . . .
 "THE COURT: I will find the defendant failed to make out a prima facie case and not require the prosecution to explain their challenges and give you an exception."
Also, at the hearing on the appellant's motion for new trial, the appellant's newly retained counsel, the trial court, and the prosecution discussed the racial composition of the jury venire and the petit jury for purpose of raising theBatson issue on appeal. Because a Batson motion based upon an alleged racial discrimination was made and that issue was preserved for appeal by the appellant's motion for new trial, we shall address the issue.
The jury venire was composed of 27 persons. On the venire were 4 black males, 10 black females, 8 white males, and 5 white females. The State struck three black females, three white females and one white male. Defense counsel struck one black male, three black females, and three white males. The jury that was empaneled, including an alternate juror, consisted of three black males, four black females, four white males and two white females. Defense counsel made a timelyBatson motion, but the trial court did not find that a prima facie case of purposeful discrimination on the basis of race was made, and, therefore, did not require the State to provide racially neutral reasons its peremptory challenges.
In this case, the trial court's finding that the appellant did not make a prima facie showing of purposeful discrimination based on race is correct. The appellant failed to present any evidence of a systematic exclusion of blacks by the prosecution or any evidence that questions by the prosecution during voir dire implied discrimination or that there was any disparate treatment of veniremembers.
The trial court is entitled to great deference in determining whether a defendant has made a prima facie showing of discrimination for Batson purposes. This Court may reverse a trial court's determination that a prosecutions's peremptory challenges were not motivated by purposeful discrimination violation of Batson only if that determination is clearly erroneous. Ex parte Branch, 526 So.2d 609, 625
(Ala.Crim.App. 1987). Here, we cannot hold that the trial court's determination was clearly erroneous.
 IV
The appellant next argues that the prosecution was guilty of misconduct because, he says, it coerced Lenzel Brown into not testifying on the appellant's behalf at trial.
Brown had been indicted for the same drug transaction for which the appellant was indicted, but, at the time of the appellant's trial, Brown's case had not been tried. The prosecution had offered Brown a plea arrangement, but the arrangement had not been confirmed. When the prosecution discovered that Brown had been subpoenaed to testify for the defense, the prosecution informed Brown's counsel that if Brown's testimony at the appellant's trial was to indicate greater participation by Brown in the drug transaction than previously thought, the offer of the plea arrangement could be rescinded. When defense counsel called Brown to testify at trial, Brown asserted his Fifth Amendment right not to testify.
We find that this conduct by the prosecution falls short of prosecutorial misconduct. Brown was indicted in connection with the same drug transaction as the appellant. The mere fact that the prosecutor stated that the plea arrangement might be rescinded if Brown's testimony connected Brown more to the crime than police believed does not show that the prosecutor induced Brown not to testify. Brown certainly was entitled to exercise *Page 443 
his Fifth Amendment right to avoid self-incrimination and not to testify for the appellant.
In order for prosecutorial misconduct to support a reversal, the appellant must show that his rights were prejudiced by the alleged misconduct. See U.S. v. Reed, 887 F.2d 1398 (11th Cir. 1989), cert. denied, 493 U.S. 1080, 110 S.Ct. 1136,107 L.Ed.2d 1041 (1990). Furthermore, the determination of whether the actions of the prosecutor amount to prosecutorial misconduct requiring a new trial is within the sound discretion of the trial court and its decision will not be overturned unless an abuse of that discretion is shown by the record. SeeWabbington v. State, 446 So.2d 665 (Ala.Crim.App. 1983), cert.denied, 467 U.S. 1254, 104 S.Ct. 3542, 82 L.Ed.2d 846 (1984).
Here, the evidence does not establish that Brown was induced to exercise his Fifth Amendment right because of the actions of the prosecutor and, therefore, we cannot hold that the trial court erred in denying the appellant's motion for a new trial on that basis.
 V
The appellant next argues that the trial court erred to reversal in permitting the State's witness, Agent Cosey, to testify that the appellant told him that Hood, who was also charged with the offense, was always "losing money," apparently in drug transactions. The appellant's counsel objected on hearsay grounds to the testimony, and his objection was overruled. Immediately thereafter, Cosey further testified that the appellant had stated that if Hood lost any more of the appellant's money, his children would get angry. The appellant argues that this testimony implicated him in the drug transaction because, he says, the testimony implies that the appellant was to receive money as a result of the drug transaction.
The State contends that the appellant's statement and the testimony regarding Hood and testified to by Cosey was part of the res gestae of the act. All acts done and words spoken during the commission of a particular act, tending to illustrate or give character to the act, are admissible into evidence as part of the res gestae. Neal v. State,460 So.2d 257 (Ala.Crim.App. 1987).
Moreover, "[f]or a statement made by parties at the scene of a crime to be admissible as a part of the res gestae exception to the hearsay rule, it must be incident to what was done and shed light on the main fact, and be instinctive and spontaneous, and not deliberative or retrospective.Williams v. State, 389 So.2d 151, 153 (Ala.Crim.App.), cert.denied, 389 So.2d 154 (Ala. 1980).
We hold that Cosey's testimony is admissible because the statements he was reporting were so intertwined with the drug transaction in this case as to be a part of the res gestae. The statements constitute evidence of the appellant's intent to participate in the crime, of the appellant expectation of remuneration from the subject drug transaction, and of the appellant's consciousness of guilt.
Moreover, Cosey's testimony in regard to the appellant's statement regarding Hood was cumulative. Agent Cosey testified that the appellant had stated that if Hood lost any more of the appellant's money, the appellant's children would be upset. This testimony is admissible. "It is well settled that the acts, declarations, and demeanor of an accused before or after the offense, whether a part of the res gestae or not, are admissible against him. . . ." Sheridan v. State,591 So.2d 129, 131 (Ala.Crim.App. 1991). Because the appellant's statement, as testified to by Cosey, merely reaffirmed that Hood had been losing money, the testimony was cumulative and its admission into evidence if error at all would be harmless error.
The judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur. *Page 444