658 A.2d 244

**Roger Lawrence BHAGWAT**

v.

**STATE of Maryland.**

**No. 14, Sept. Term, 1994.**

Court of Appeals of Maryland.

May 16, 1995.

264

David M. Simpson, Greenbelt, for appellant.

Kathryn Grill Graeff, Asst. Atty. Gen., (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

BELL, Judge.

Today we are asked to consider two questions: (1) Whether the proper procedure concerning the invocation of a witness's privilege against self-incrimination was followed in the case *sub judice;* and (2) whether a plea agreement which precludes one co-defendant from testifying at the other co-defendant's trial violates public policy. These questions are closely interrelated. Treated together, they require that another related issue be addressed: the propriety of the court permitting the privilege to be invoked premised on an invalid plea agreement. This issue necessitates an assessment of the adequacy

of the inquiry and procedure employed by the court to determine that the privilege was properly invoked. Having inquired of counsel for the witness, who was not present, as to the advice he gave the witness, the trial court refused to allow the witness to be called for any purpose. Roger Lawrence Bhagwat, the appellant, appealed to the Court of Special Appeals. We granted certiorari, on our own motion, prior to that court considering the matter.

The facts of this case are rather simple. On November 13, 1992, pursuant to a search and seizure warrant, members of the Prince George's County police department and federal officers conducted a search of 804 Maury Avenue, # 106, Oxon Hill, Maryland, premises undisputedly owned by the appellant's parents, Norma and Lal Ranrattan Bhagwat. Glassine baggies, a triple beam scale, a handgun, a shotgun, two separately packaged quantities of crack cocaine, and $400.00 in currency were seized from the premises. Crack cocaine (4.3 grams), $266.00 in cash, and a cellular phone were seized from the person of the appellant, when he approached the premises.[1]

The appellant was charged, together with his brother, Christopher Bhagwat (hereinafter "Christopher"), in a multi-count indictment alleging possession of cocaine with intent to distribute; possession of cocaine; conspiracy to distribute

---

1. It was undisputed that the appellant resided at the premises during the first half of 1992. The evidence was conflicting, however, as to whether he was living there at the time of the raid. The appellant was connected to the premises by an envelope, postmarked October 22, 1992, addressed to him at that address and his passport, recovered from his parents bedroom. The lead detective also testified that the appellant gave the Maury Avenue address as his residence when he was arrested.

Complaints about shootings in the area of the appellant's parents' home prompted police surveillance of the area. The police began to watch the appellant and his brother, Christopher, after seeing them drive a black Porshe 944 or a Jeep Cherokee with tinted windows on a number of occasions in August, September, October and November of 1992.

cocaine;[2] and use of a firearm in drug trafficking.[3] Christopher accepted the State's plea offer,[4] but the appellant chose to go to trial. The first time the trial court discussed whether Christopher could be called as a witness was just prior to trial, when the court was apprised that Christopher had accepted the plea offer and that the appellant had subpoenaed Christopher as a witness. In response to the court's inquiry whether he had advised Christopher of his Fifth Amendment rights, Christopher's attorney replied:

> Yes. The plea agreement is contingent on him not exonerating his brother, but also not implicating his brother. I have so advised him not to testify.

> If, in fact, he would be called he would be taking his Fifth Amendment, exercising his Fifth Amendment rights.

Because the matter was not then ripe for decision,[5] the court did not rule on the issue at that time, deciding, instead, to allow the matter to "develop as it develops." The record reflects, however, that the court believed that Christopher could invoke his privilege against self-incrimination without

---

**2.** Counts three and four both charged conspiracy to distribute cocaine. Therefore, the State nolle prossed count four at the end of the State's case.

**3.** On the day of the search and seizure, Christopher, who still lived at the premises, approached the house a short time after the appellant arrived. A pager and $268.00 in cash were seized from his person. Although no illegal substances were seized from him, Christopher had previously sold crack cocaine to one of the police department's "confidential sources" during a controlled buy.

**4.** Christopher was eventually sentenced to two years imprisonment, with all but forty-one days suspended. He served a total of nineteen days in prison.

**5.** The appellant's counsel informed the court:

> Though I have at this moment been instructed and have it written that I am not to call Chris Bhagwat, that during the course of trial things can develop and I want the option remaining open to me if my client based on developments decides that he wishes to change his instructions. I do not believe it is proper until a question is asked of Chris Bhagwat that invites him because of the question asked to invoke the Fifth, and at that time the decision whether that is a proper invoking of the Fifth can be made.

personally taking the witness stand; it was sufficient that his attorney advised the court of his decision not to testify.

The issue surfaced again during the trial. The appellant having subpoenaed Christopher, a hearing was held outside the presence of the jury to determine whether Christopher would testify. Christopher was not present [6] at the hearing at which the following colloquy occurred:

THE COURT: ... The posture we are in at the moment is as I understand it Mr. Petros has subpoenaed brother Chris.

MR. CONWAY: Yes, Your Honor.

THE COURT: It is my understanding from the State that whatever their plea offer was to brother Chris included a condition that he not testify for either side, defense or State, in brother Roger's case. In spite of that agreement Mr. Petros has subpoenaed him and intends to call him.

I want to point out to you, however, there has been evidence in this case—what is the number, the black jacket?

MR. PETROS: Defense 2.

THE COURT: Defendant's Number 2, the dark jacket there belongs to Chris, and there has also been evidence that cocaine was seized from that jacket.

MR. CONWAY: I understand, Your Honor.

MR. PETROS: There is also State's Exhibit 18 which was Chris' and came in over objection. The pager. Which the State ties in—

MR. CONWAY: I was not aware of those developments, but I am aware, and I have been advised by my client that he would be invoking his Fifth Amendment privilege so as

---

6. The record reflects that, when court convened, counsel for both the appellant and Christopher were present, but neither client was. The appellant was brought into the courtroom shortly thereafter, however. When Christopher's attorney asked, "Does Your Honor want me to get Christopher Bhagwat?," he was informed, "He is not on trial." The proceeding then continued. Thus the record does not reflect that Christopher was present during these proceedings.

to not to vitiate the agreement that he has with the government.

Rejecting the appellant's argument, the court refused to allow the appellant to call Christopher noting that his counsel "has indicated he has advised him to plead the Fifth," and that "[t]he evidence so far by putting him on the stand, by calling him to the stand incriminates him." The court was not impressed with the appellant's argument that the limited inquiry he intended to make with respect to the ownership of a coat found in the raid and the Jeep Cherokee could not incriminate Christopher.[7] Indeed, the court asserted that, "If you ask him his name he has a right to plead the Fifth." Moreover, to the appellant's lament that the refusal to allow him to call Christopher "is highly prejudicial," the court responded, "[i]t is highly prejudicial to Christopher, that is who it is highly prejudicial to."

The appellant was convicted of possession with the intent to distribute cocaine and possession of cocaine. He received a mandatory sentence of ten years imprisonment, without the possibility of parole.[8]

## I.

The privilege against self-incrimination is guaranteed under both Maryland and federal law.[9] It only protects

---

7. Appellant's counsel understood that the plea agreement "was simply that Chris Bhagwat would not assert in the trial of Roger Bhagwat as to his ownership of the drugs and that was it." Thus, he proposed to limit his inquiry as indicated. He did not believe that the fact that drugs were found in the coat that was identified as Christopher's and about which he intended to inquire, precluded that inquiry.

8. The appellant was sentenced pursuant to Maryland Code Annotated (1957, 1992 Repl.Vol., 1994 Cum.Supp.), Art. 27 § 286(c)(1) and (2).

9. In Maryland the privilege is guaranteed by Article 22 of the Declaration of Rights of the Maryland Constitution, which states "[t]hat no man ought to be compelled to give evidence against himself in a criminal case." Likewise, the Fifth Amendment to the United States Constitution provides, in pertinent part, that "no person ... shall be compelled in any criminal case to be a witness against himself...." The Fifth

against self-incrimination compelled by the government or its agents. *See Choi v. State,* 316 Md. 529, 536, 560 A.2d 1108, 1111 (1989); *Allen v. State,* 183 Md. 603, 607, 39 A.2d 820, 821–22 (1944); *Marshall v. State,* 182 Md. 379, 383, 35 A.2d 115, 117 (1943); *Jacobs v. State,* 45 Md.App. 634, 653–54, 415 A.2d 590, 601, *cert. denied,* 288 Md. 737 (1980). *See also* McLain, *Maryland Evidence,* § 514.1, at 603 (1987 & Supp. 1994). The privilege is waivable, affording no protection for statements voluntarily given. *See* McLain, *supra,* § 514.1, at 603. *See also, Choi v. State,* 316 Md. at 542–43, 560 A.2d at 1114–15; *Adams v. State,* 200 Md. 133, 144, 88 A.2d 556, 561 (1952). Moreover, it is well-settled that the privilege is personal to the witness and, thus, must be exercised by the witness. *Royal v. State,* 236 Md. 443, 447, 204 A.2d 500, 502 (1964). And "because the privilege is not a prohibition of inquiry, but is an option of refusal," [10] *id.,*

---

Amendment is of course applicable to Maryland via the Fourteenth Amendment. *See Malloy v. Hogan,* 378 U.S. 1, 8, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653, 659 (1964); *Adkins v. State,* 316 Md. 1, 6–7 n. 5, 557 A.2d 203, 205 n. 5 (1989). In addition, "[t]he privilege contained in Art. 22 is generally *'in pari materia* with its federal counterpart.'" *Id.* at 6–7 n. 5, 557 A.2d at 205 n. 5; *see also Ellison v. State,* 310 Md. 244, 259 n. 4, 528 A.2d 1271, 1278 n. 4 (1987); *Richardson v. State,* 285 Md. 261, 265, 401 A.2d 1021, 1023–24 (1979). Moreover, both the state and the federal privilege are available in any type of proceeding, not just criminal. *See, e.g., Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274, 281 (1973) (privilege protects individual "in any ... proceeding, civil or criminal, formal or informal, where the answers might incriminate him [or her] in future criminal proceedings"); *Whitaker v. Prince George's County,* 307 Md. 368, 384–86, 514 A.2d 4, 13–14 (1986).

10. According to *McCormick on Evidence,* § 136, at 335 (E. Cleary 3d ed. 1984), "[t]he rationale for requiring a witness to submit to questioning and to assert the privilege if he [or she] desires to invoke it is that the nature of the privilege so requires." Thus,

[s]ince the privilege is applicable only if the specific response would come within the scope of protection and the witness is not the ultimate arbiter of whether this is the situation, a decision on the propriety of invoking it cannot be made unless the question has been put and the witness has asserted his [or her] basis for refusal to answer. Of course, this procedure endangers to some extent the values which the privilege is designed to protect. Subjecting a witness to a series of questions to which he [or she] must respond by

[t]he witness should first be called to the stand and sworn. *Midgett v. State*, 223 Md. 282, 289, 164 A.2d 526, 529 (1960), *cert. denied*, 365 U.S. 853, 81 S.Ct. 819, 5 L.Ed.2d 817 (1961). Interrogation of the witness should then proceed to the point where he [or she] asserts his [or her] privilege against self-incrimination as a ground for not answering a question. *Shifflett v. State*, 245 Md. 169, 173–74, 225 A.2d 440, 443 (1967). If it is a jury case, the jury should then be dismissed and the trial judge should attempt to 'determine whether the claim of privilege is in good faith or lacks any reasonable basis.' *Midgett v. State, supra*, 223 Md. at 289[, 164 A.2d at 530]. If further interrogation is pursued, then the witness should either answer the questions asked or assert his [or her] privilege, making this decision on a question by question basis. *Royal v. State*, 236 Md. 443, 447, 204 A.2d 500, 502 (1964).

*Richardson v. State*, 285 Md. 261, 265, 401 A.2d 1021, 1024 (1979).

■ The test of the witness's entitlement to invoke the privilege against self-incrimination—(1) whether there is a reasonable basis for the invocation of the privilege; and (2) whether the privilege is invoked in good faith, *see Adkins v. State, supra*, 316 Md. at 6–7, 557 A.2d at 205–06; *Richardson v. State, supra*, 285 Md. at 265, 401 A.2d at 1024; *Midgett v. State*, 223 Md. at 288–92, 164 A.2d at 529–31; McLain, *Maryland Evidence, supra*, § 514.1, at 605—was well stated in *Choi v. State*, 316 Md. 529, 560 A.2d 1108 (1989). It is whether "the witness has reasonable cause to apprehend danger from a

invoking the privilege is somewhat akin to the interrogation which the privilege has historically sought to protect against. Requiring that the witness make a question-by-question judgment on the legal necessity of responding creates a danger that the privilege will not be invoked because of confusion or physical exhaustion rather than the knowing and intentional decision not to invoke it required for a waiver of a constitutional right. Against these dangers, however, must be weighed the public interest in obtaining as much information as possible without directly infringing on the witness's protected rights.

*Id.*

direct answer," *id.* at 536, 560 A.2d at 1111, and whether it is "evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* at 537, 560 A.2d at 1111.

■ Although the privilege is a personal one, under some circumstances, the witness's counsel may focus the witness's attention to the privilege, or acting as the witness's agent, plead it on his or her behalf. *See Farmer v. State,* 5 Md.App. 546, 551, 248 A.2d 809, 812 (1968), *cert. denied,* 253 Md. 733 (1969); *McCormick on Evidence,* § 120, at 289 (E. Cleary 3d ed. 1984). *See also Rowe v. State,* 62 Md.App. 486, 499, 490 A.2d 278, 284, *cert. denied,* 303 Md. 684, 496 A.2d 683 (1985); *Pope v. State,* 7 Md.App. 533, 538, 256 A.2d 529, 532 (1969); *Poling v. State,* 6 Md.App. 45, 47, 250 A.2d 126, 127, *cert. denied,* 255 Md. 743 (1969). Thus, an attorney representing a witness by objecting to a question on the grounds that it may incriminate the witness, initiates and essentially invokes the witness's privilege, if the witness adopts the objection by refusing to answer the question. *Farmer,* 5 Md.App. at 551, 248 A.2d at 812.

■ Where there is a clear indication, reflected on the record, that the witness intends to invoke the privilege against self-incrimination if called to the witness stand, the *Richardson* procedure need not be strictly applied. *See Adkins, supra,* 316 Md. at 8 n. 7, 557 A.2d at 206 n. 7. In that case, if it is a jury trial, "[t]he mechanical procedure of first calling the witness before the jury" should be omitted. *Id.* In other words, the witness should be called and sworn, but without the jury being present,[11] and questioned before or by the court. In this way, the court is enabled to perform its function of determining whether the privilege has been invoked in good

---

11. We wish to emphasize the fact that the questioning of the witness should not occur in front of the jury. This is so because of the potential for prejudice that this presents.

faith or has a reasonable basis. *Midgett v. State, supra,* 223 Md. at 289, 164 A.2d at 530.

As the State points out, not all plea agreements which cause a witness to invoke the right against self-incrimination are constitutionally flawed. Absent an indication that the State was thereby seeking to discourage or prevent the witness from testifying, a plea agreement contemplating that the guilty plea be entered after the co-defendant's trial has been upheld in the face of a compulsory process challenge, even though its effect may be to cause that defendant to refuse to testify on Fifth Amendment grounds when called by the co-defendant. *See United States v. Munoz,* 957 F.2d 171, 173 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 332, 121 L.Ed.2d 250 (1992); *State v. Rivera,* 124 Ariz. 123, 602 P.2d 504, 506 (Ct.App.1979). It has also been held that merely informing a defendant, called by his co-defendant and to whom the State had tendered an offer of a plea agreement, that the offer "might be rescinded if [his testimony] connected [him] more to the crime than the police believed" did not establish that that defendant had been induced not to testify, since he "certainly was entitled to exercise his Fifth Amendment right to avoid self-incrimination and not to testify for the appellant." *Daniel v. State,* 623 So.2d 438, 442–43 (Ala.Crim.App.1993). Where, by the terms of the plea agreement, a co-defendant is precluded from testifying for the defendant, courts recognize that as a denial of the defendant's right to compulsory process. *See Jones v. United States,* 386 A.2d 308, 316 n. 7 (D.C.App. 1978), *cert. denied,* 444 U.S. 925, 100 S.Ct. 263, 62 L.Ed.2d 181 (1979) ("There is no question that the government's use of a plea bargain in order to induce or encourage a witness' silence cannot be tolerated."); *United States v. Bell,* 506 F.2d 207, 222 (D.C.Cir.1974) ("Inarguably, governmental impairment of the accused's ability to call witnesses in his [or her] behalf cannot be tolerated."); *People v. Fryer,* 247 Ill.App.3d 1051, 187 Ill.Dec. 786, 795, 618 N.E.2d 377, 386 (1993) ("It is one thing to condition a plea agreement on a witness' abstaining from testifying falsely; it may be quite another thing to condition a plea agreement on the witness' abstaining from testifying at

all."); [12] or due process, *United States v. Henricksen,* 564 F.2d 197, 198 (5th Cir.1977) (per curiam); *State v. Fort,* 101 N.J. 123, 501 A.2d 140, 144 (1985).

In *Fort, supra*—not unlike the case *sub judice*—the State's plea agreement with two of the defendant's co-defendants provided that the co-defendants would not testify on behalf of the two defendants on trial. The defendants contended that such a "no testimony agreement" deprived them of the testimony of the co-defendants and thereby violated their federal and state compulsory process rights. The Supreme Court of New Jersey opined that a "no testimony agreement" has the clear capacity to prejudice a defendant. 501 A.2d at 144. Moreover, the court noted that once the State extracts, as a condition of his or her plea agreement, a promise from a witness not to testify, then it is nearly impossible to determine whether the witness's refusal to testify is based on the privilege against self-incrimination or the desire to satisfy the plea agreement. *Id.* The court concluded:

> [T]he 'no testimony' agreement violated defendants' constitutional rights to due process and to present witnesses in their favor. Underlying this conclusion is our belief that the trial, although inevitably an adversarial proceeding, is above all else a search for truth. That quest is better served when the State does not suppress the truth by sealing the lips of witnesses.

*Id.*

■ Although we have not previously had the occasion to consider this issue, our review of the authorities persuades us that a plea agreement with a co-defendant conditioned upon that co-defendant's not testifying for the defense, may deny the defendant on trial both the Sixth Amendment right to

---

**12.** The courts in *People v. Fryer,* 247 Ill.App.3d 1051, 187 Ill.Dec. 786, 795, 618 N.E.2d 377, 386 (1993), and *United States v. Bell,* 506 F.2d 207, 222 (D.C.Cir.1974), found the defendant's allegations, under the facts of those cases, to be without substance. In *Jones v. United States,* 386 A.2d 308, 315–16 (D.C.App.1978), the court held the issue to be unpreserved and not cognizable as plain error.

compulsory process and due process. While not so proscriptive as a state rule disqualifying an alleged accomplice from testifying on behalf of his partner in crime, *see Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), or as blatantly coercive as a "lengthy and intimidating warning" by a trial judge, threatening the potential witness with a grand jury investigation for perjury, *see Webb v. Texas*, 409 U.S. 95, 97, 93 S.Ct. 351, 353, 34 L.Ed.2d 330, 333 (1972) (per curiam), such a plea agreement does implicate the defendant's fundamental right to present witnesses. Moreover, as the *Fort* court pointed out, a trial is more than an adversarial proceeding, it is, more importantly, a search for the truth. *Fort*, 501 A.2d at 144. If the State is permitted singlehandedly to silence witnesses, that search is seriously impeded and the credibility of the entire judicial system is seriously undermined.

## II.

The State concedes that *Richardson* outlines the procedure to be followed when a witness invokes the privilege against self-incrimination, and it does not disagree with the appellant's contention that the trial court did not follow that procedure in this case. Characterizing the appellant's complaint as "technical," it submits that the refusal of the trial court to allow Christopher to be called to invoke the privilege personally, after questioning, and instead, allowing Christopher's attorney to invoke it for him, does not require reversal. The State relies on *Midgett, supra.* In that case, the defendant called his co-defendant as his witness. When the trial court advised the co-defendant, who was not sworn, that he had the right not to incriminate himself and that if he waived that right and testified, he might be asked questions and then give answers which might incriminate him in his own subsequent proceedings, he elected not to testify. The trial court excused the co-defendant. The defendant challenged not only the propriety of the co-defendant's exercise of the privilege, but also the procedure by which he was allowed to do so. In rejecting both challenges, this Court noted, "[a]lthough it would have

been better practice that the witness should first have been put under oath, we cannot find any prejudice to the defendant from the manner in which [the invocation of his privilege] was handled." 223 Md. at 292, 164 A.2d at 531. We pointed out that the co-defendant's statement that " '[w]ell, in that case, then, I won't be able to testify because it would cause irreparable damage to my case,' " *id.* at 291, 164 A.2d at 531, was a sufficient statement of a claim of privilege and that "[t]he oath of the witness would have added nothing to the information ... which was before the court...." *Id.* at 292, 164 A.2d at 531.

The State argues, therefore, that where the purpose underlying the rule that the privilege against self-incrimination must be exercised personally has been satisfied, the violation is technical and the defendant is not prejudiced; hence, reversal is not required.[13] It stresses that those purposes were stated in *Midgett* as being to allow the witness to determine whether to invoke the privilege, "not that the rule is for the exclusion of unreliable evidence," and to permit the court to determine

---

13.  The State also notes that in *Allen v. State,* 318 Md. 166, 567 A.2d 118 (1989), this Court recognized that it may be improper to knowingly call a witness in order to have that witness invoke the privilege against self-incrimination in front of the jury. Our express holding was:

under most circumstances, it is improper for a prosecutor to require a witness to claim his [or her] privilege against self-incrimination in the presence of the jury when ... the prosecutor knows or has reason to anticipate that the witness will assert the privilege in front of the jury.

*Id.* at 174, 567 A.2d at 122. We explained the policy underlying the holding as follows:

When a witness's refusal to testify is the only source of the inference that the witness engaged in criminal activity with the defendant, and the refusal is also a material part of the prosecution's case, then any improper inferences drawn from that refusal carry a 'critical weight' and justify a reversal.

*Id.* at 179, 567 A.2d at 124. The test, therefore, "is whether the State's Attorney calls the witness for the effect of the claim of privilege on the jury." *Id.* at 176, 567 A.2d at 123 (quoting *Vandegrift v. State,* 237 Md. 305, 309, 206 A.2d 250, 253 (1965)). This policy applies equally when it is the trial judge, rather than the prosecutor, that calls the witness. *See Allen* at 177, 567 A.2d at 123.

whether the claim is made in good faith and has a reasonable basis. 223 Md. at 289, 164 A.2d at 530.

With regard to the appellant's argument concerning the validity of the plea agreement, the State argues that it is not preserved for appellate review. To support that argument, it points to the fact that at no time did the appellant argue that the plea agreement violated his Sixth Amendment right to compulsory process. The appellant argued only that the witness had no right to invoke the privilege against self-incrimination and, in any event, should have personally invoked the privilege, after questioning. Because "[a]n argument not made at trial in support of the admission of evidence cannot be asserted for the first time on appeal," the State concludes, citing *White v. State*, 324 Md. 626, 640, 598 A.2d 187, 194 (1991), that the appellant has waived the compulsory process issue as an appellate issue.

## III.

The precise terms of the plea agreement between Christopher and the State did not appear in the record. The record references to that agreement, by the trial court and Christopher's counsel, however, make clear that one of its provisions was that Christopher not be a defense witness. When the matter first came up, Christopher's attorney characterized the agreement as being "contingent on him not exonerating his brother, but also not implicating his brother." At trial, the trial court characterized it as including "a condition that he not testify for either side, defense or State, in brother Roger's case." Later, after Christopher had been subpoenaed as a defense witness and the court had apprised him of evidentiary developments of significance to his client, Christopher's attorney's comments once again provided insight into the terms of the plea agreement, when he informed the court, "I have been advised by my client that he would be invoking his Fifth Amendment privilege *so as to not to vitiate the agreement that he has with the government.*" (Emphasis added.)

There is, to be sure, as the State argues, evidence in the record sufficient to permit the trial court to conclude that Christopher invoked the privilege against self-incrimination in good faith and on a reasonable basis. Indeed, upon examining the inquiry the appellant proffered he wanted to make concerning admissible evidence connecting Christopher to the cocaine seized on the premises in light of the test of self-incrimination, see *Choi*, 316 Md. at 536–37, 560 A.2d at 1111, the court properly could find that Christopher reasonably apprehended danger from either a direct answer or an explanation as to why a direct answer could not be given. On the other hand, the existence of a pending plea agreement between Christopher and the State, contingent upon Christopher not testifying for the appellant, presents another consideration which obscures the basis for Christopher's decision. That fact, viewed in light of the statement by Christopher's counsel that the privilege was being invoked "so as to not to vitiate the agreement that he has with the government," provides evidence that it was the proscription of the plea agreement, rather than the privilege, that motivated Christopher's decision not to testify.

If there were no plea agreement and, thus, the only issues before the court were whether the court correctly determined that Christopher appropriately invoked the privilege against self-incrimination and employed the proper procedure for making that determination, the State's argument that a mere technical violation had occurred would be directly presented for our review.[14] Where, however, as here, there is

---

14. Whether, when the "personal" privilege of the witness is invoked by the attorney, without the witness even being present, a trial court's refusal to comply with the *Richardson* procedure is a mere technicality is far from clear. Ordinarily, when this Court has characterized a right as "personal," we have meant that the right must be exercised by the beneficiary of the right, not by his or her representative. *See, e.g., State v. Kenney*, 327 Md. 354, 361–62, 609 A.2d 337, 341 (1992); *Treece v. State*, 313 Md. 665, 681, 547 A.2d 1054, 1062 (1988). *Midgett* is not inconsistent with this principle. There the trial court spoke with the witness, himself, and ascertained the witness's intention to invoke his privilege against self-incrimination. It was only the oath that was

more than one conceivable basis for the witness's refusal to testify, one of which is improper, the court has more to do than simply determine whether the witness has a good faith basis for invoking his or her privilege against self-incrimination; it must determine which of the possible reasons actually prompted the response. In this case, Christopher could have acted for the purpose of avoiding making incriminating statements, as invocation of the privilege against self-incrimination contemplates, or he could have been acting consistent with his concern that he remain eligible to receive the benefits of a favorable plea agreement. As to the latter, his continued eligibility depended upon his refraining from testifying for his brother, the appellant. To be sure, as we have seen, invoking one's Fifth Amendment privilege to retain eligibility for a favorable plea agreement ordinarily is not improper, but a plea agreement conditioned upon a witness refraining from testifying for the defendant is improper. It follows, therefore, that where the plea agreement is improper, invoking one's Fifth Amendment privilege to avoid violating the plea agreement may also be improper or, at least, makes the real reason for refusing to testify unclear. Saying that one is invoking one's Fifth Amendment privilege to avoid violating a plea agreement with the State is, at the very least, ambiguous. In such a circumstance, it is incumbent on the trial court to inquire as to which of the reasons given is the real reason for the refusal. Such an inquiry requires the presence of the witness and not just his or her counsel.[15] Of course, in this case, no inquiry of any kind was made of the witness. Consequently, other than counsel's comment that it was to avoid violating the plea agreement, even had the witness invoked the

---

missing in that case. Here, more than the oath is missing; the witness is missing. Consequently, in this case the privilege has truly been asserted, as far as the Court knows, by the witness's counsel.

**15.** The inquiry must be conducted with the recognition that "[o]nce the State extracts a promise not to testify as a condition of a plea agreement, it is practically impossible to determine whether a witness refused to testify because of the privilege against self-incrimination or because of a desire to perform the promise." *Fort,* 501 A.2d at 144.

privilege personally, it has never been determined why he did so—whether it was because he wanted to avoid incriminating himself or because he wanted to perform the promise.

It is true, as the State asserts, that the appellant never argued to the trial court that the plea agreement, by precluding the witness from testifying for the appellant, violated his Sixth Amendment right to compulsory process or, for that matter, violated public policy. The main thrust of his argument, instead, was that the witness had to exercise his Fifth Amendment privilege personally and, therefore, had to take the witness stand. He also disputed the court's determination that his proffered inquiry would implicate the witness's privilege against self-incrimination. Moreover, he insisted that the court's ruling was "highly prejudicial" to his case. We do not believe that preservation of an objection premised on the violation of a specific constitutional provision requires that constitutional provision to be specifically mentioned as the basis for the objection. It is enough that the record reflects that the propriety of the action that is the object of the objection, here the decision to permit Christopher to invoke his Fifth Amendment privilege and the procedure employed, has been challenged as unlawful. The State does not argue that the appellant did not challenge the efficacy of the plea agreement or the correctness of the court's privilege ruling. Indeed, the entire thrust of the appellant's argument was that it was the plea agreement, which prompted Christopher's taking of the Fifth which, in turn, adversely affected his ability to obtain testimony favorable to his cause. He did, and said, enough, we hold, to preserve the issue for review.[16]

---

16. The appellant's counsel had a somewhat different understanding of the plea agreement than did the court and the witness's counsel. He believed that the agreement simply required the witness to refrain from claiming, in his brother's case, that the drugs seized from the premises were his drugs. The trial court did not resolve that difference of understanding. For purposes of this case, however, we may rely upon the characterization of the agreement by the witness's attorney and by the court.

## IV.

Consistent with his understanding of the plea agreement, appellant's counsel proffered that he was calling Christopher with regard to the ownership of the Jeep Cherokee and the jacket found in the bedroom of the searched premises. He expected Christopher to testify that both belonged to him and not to the appellant. At trial, the appellant and his father so testified.[17]

Asserting that "numerous other witnesses testified" as to Christopher's ownership of the Jeep and the jacket, the State contends that the appellant suffered no prejudice from the ruling of the trial court accepting Christopher's exercise of the privilege against self-incrimination. It, in other words, argues that the trial court's error was harmless beyond a reasonable doubt and does not require reversal.

The test of harmless error is whether "a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict...." *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976). Thus, reversal is required unless the trial error did not influence the verdict. The reviewing court must exclude that possibility "beyond a reasonable doubt." Although the appellant and his father testified as to the ownership of the Jeep and the coat, that is not to suggest that Christopher's testimony confirming or corroborating that testimony would have added nothing to the case. We cannot say, therefore, beyond a reasonable doubt, that the trial court's error was harmless.

---

17. The State proffered in its brief that "numerous other witnesses testified to this effect." State's brief at 14. This is not correct. Other than the testimony by the appellant and his father, the appellant's girlfriend's mother and a friend testified on this subject. They were able to testify only as to appellant's use or ownership of an old Oldsmobile. The appellant's girlfriend's mother testified that she did not know anything else about any other vehicles. The appellant's friend was not even asked whether the appellant owned any other vehicles.

The State also argues that the appellant's conviction was based only on the cocaine found *on his person.* It relies on the fact that the jury found the appellant not guilty of both conspiracy to distribute cocaine and use of a firearm during a drug trafficking offense, thus, indicating that the jury was not convinced that the cocaine seized from the back bedroom closet was under the dominion and control of the appellant. Asserting that the appellant's counsel and the trial court shared this view,[18] the State maintains, therefore, that even if Christopher had testified that the drugs and paraphernalia found in the back bedroom were his, that testimony would not have affected the jury's verdict.

Notwithstanding the conclusion drawn by the appellant's counsel and the trial court, it is not at all clear upon what basis the jury determined the appellant's guilt of possession and possession with intent to distribute cocaine. Counts one and two of the indictment drew no distinction between cocaine found on the appellant's person and that recovered from the back bedroom closet. And, of course, the jury did not return a special verdict in that regard. Moreover, in its case in chief and, indeed, in cross-examining the appellant and his witnesses, the State spent a significant amount of time attempting to establish a connection between appellant and his parents' home during the requisite period and, by that connection, his dominion and control over the cocaine and related paraphernalia found there. Thus, the State offered an envelope, postmarked October 22, 1992, and addressed to the appellant at that address, and testimony that the police observed the appellant at the premises shortly before the search and seizure warrant was executed. The expert testimony the State

18. At the sentencing hearing, the appellant's counsel expressed his belief that the appellant's conviction "really stems from the belief of Detective Herbert, the jury's belief of Detective Herbert that he found a single bag of, which was disputed testimony, of cocaine by the search of the person of Roger Bhagwat." At the same hearing the trial court expressed a similar view when it observed that "... the jury did not find you guilty of the gun and the paraphernalia in the back bedroom. They found you guilty only of possession with intent to distribute, and that would be for the drugs that were found on your person."

offered was designed to explain why the appellant would maintain a connection with his parents' home, even after he no longer lived there. To that end, the expert testified as to what a stash house is and how it is used.[19] And, while the expert testified that the 4.3 grams of cocaine allegedly recovered from the appellant's person was, itself, consistent with an intent to distribute, he gave the same opinion with respect to the other quantities of cocaine seized from the bedroom closet.

The jury was instructed with respect to the constructive possession of cocaine and, in that regard, was told to consider all of the circumstances. Such an instruction has no value but for the State's contention that the appellant had dominion and control over the cocaine found in the back bedroom closet. The State's closing argument referred not only to the cocaine allegedly recovered from the appellant's person but also to the cocaine recovered from the back bedroom, which it characterized as packaged for distribution. The State also argued that the appellant's parents' home was a stash house, out of which the appellant operated. In arguing for a guilty verdict on the use of a firearm in a drug trafficking offense count, the prosecutor relied not simply on the value of the cocaine allegedly found on the appellant's person, but on the total value of all of the cocaine the police recovered in the raid, as well as the $400.00 in cash taken from a safe in the closet. Although the prosecutor maintained that the appellant's guilt could be established on the basis of the 4.3 grams alone, he stressed, in addition, the appellant's dominion and control over the cocaine at his parents' home, as to which he asserted that a sufficient nexus was shown.

That the jury found the appellant not guilty of the firearm offense and the conspiracy count does not lead inexorably to the conclusion that the jury's verdict was based only on the 4.3

19. According to the expert witness:

A stash house would be a place where drugs are stored, and no drugs are usually sold out of a stash house. The dealer just keeps his drugs at that particular place, stores them there until he needs them and he would go and sell from a different location.

grams of cocaine. The trial court instructed the jury on the use of a handgun in a drug trafficking offense in the words of the statute, *i.e.*, "during and in relation to any drug trafficking crime, a person who uses, wears, carries, or transports a firearm is guilty of a separate felony." It then told the jury that the firearm "has to be intended to be used in the general drug trafficking culture." By way of clarification, the court supplemented its instructions telling the jury that "mere possession of a firearm in one's own home is legal," but that "[w]here a firearm is found proximate to drugs, money, and related accoutrements, the question is whether the placement of the weapon was designed to facilitate the narcotics enterprise, by, say protecting against untoward contingencies or safeguarding the cache of drugs." [20] From this definition, it is clear that the jury could have concluded that more than possession of the firearm proximate to the drugs was required.[21]

Nor is it clear why the jury found the appellant not guilty of a conspiracy. It could be that the jury compromised the verdict.

In any case, given the test of harmless error, it is not at all clear, beyond a reasonable doubt, that Christopher Bhagwat's testimony may not have influenced the jury's verdict. Accordingly, a new trial is required.

*JUDGMENTS REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR A NEW TRIAL. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.*

---

**20.** This statement apparently was taken from *Rich v. State,* 93 Md.App. 142, 611 A.2d 1034 (1992), *vacated,* 331 Md. 195, 627 A.2d 537 (1993), in which the Court of Special Appeals held that a firearm is "used" during and in relation to a drug trafficking offense whenever it in any way facilitates a drug offense; it need not be actively employed or brandished. That holding was reversed by the holding in *Harris v. State,* 331 Md. 137, 626 A.2d 946 (1993).

**21.** We so held in *Harris v. State,* 331 Md. 137, 150–54, 626 A.2d 946, 952–54 (1993).